Pease, Adm'x, etc., vs. The Chicago & Northwestern R'y Co.

PEASE, Administratrix, etc., vs. THE CHICAGO & NORTH-
WESTERN RAILWAY COMPANY.

*September 24 — October 14, 1884.*

RAILROADS: MASTER AND SERVANT. *(1) Injury to employee: Negli-
gence of co-employee: Conductor and brakeman. (2) Defective
appliances: Proximate cause.*

1. The rule that a master is not liable for injuries to his servant occa-
sioned by the negligence of a fellow-servant in the same general
business, adhered to and applied in a case where a brakeman on
an express train was killed through negligence on the part of the
conductor.
2. The chains connecting the lever with the draw-bar were frequently
broken so that it was necessary for the brakeman to go beneath
the platform to uncouple the cars. While the brakeman was so
engaged, the conductor, not knowing his position, signaled the
engineer to go ahead, and the train in starting injured the brake-
man so that death ensued. *Held*, that the negligence of the con-
ductor in starting the train, and not the failure to have the chains
repaired so that the cars could be uncoupled with the lever, was
the proximate cause of the injury.

APPEAL from the Circuit Court for *Sauk* County.

Action to recover damages for the death of the plaintiff's
intestate alleged to have been caused by the negligence of
the defendant company. The circumstances of the accident
are stated in the opinion. The jury found a special verdict
as follows:

1. Was the deceased, Randall Pease, a brakeman in the
employ of the defendant upon a passenger train of the de-
fendant? *A.* Yes.

2. Was the deceased injured at Elroy, Wis., on the 7th of
February, 1882, by being caught between two passenger
cars of the train on which he was serving; and did his
death result from such injury? *A.* Yes.

3. Was the injury to said Pease caused by the want of
ordinary care on the part of the conductor? *A.* Yes.

4. If the third question be answered affirmatively then state what was the want of ordinary care on the part of the conductor? *A*. In signaling ahead without a signal from brakeman.

5. Had it been customary to the knowledge of the conductor for the deceased in case the chains were broken to go under the cars to uncouple them? *A*. Yes.

6. Might the said deceased have uncoupled the cars from the platform without going under the same? *A*. No.

7. Did any want of ordinary care on the part of said deceased contribute to his injury? *A*. No.

8. Did the conductor of the train order the deceased to go under the cars in order to uncouple them? *A*. Yes.

9. Had the train, at the time when it stopped and the deceased attempted to uncouple the cars, arrived at the ordinary and proper place for uncoupling the cars where they were to be uncoupled with the bar and the train was to be stopped for such purpose? *A*. Yes, or in vicinity.

10. If upon this verdict this plaintiff shall be held to be entitled to recovery, at what sum do you assess her damages? *A*. $3,000.

Both parties moved for judgment upon the verdict. The motion of the defendant was granted, and from the judgment entered accordingly the plaintiff appealed.

For the appellant there was a brief by *Lusk & Perry*, and oral argument by *Mr. Lusk*. They contended, *inter alia*, that the company was bound to supply and maintain suitable cars and appliances for operating its road and to take due care and use all reasonable means to guard against defects which would endanger the lives and limbs of its employees. *Brabbits v. C. & N. W. R'y Co.* 38 Wis. 289; *Wedgwood v. C. & N. W. R'y Co.* 41 id. 482; *Wedgwood v. C. & N. W. R'y Co.* 44 id. 44; *Smith v. C., M. & St. P. R'y Co.* 42 id. 520; *Stetler v. C. & N. W. R'y Co.* 46 id. 502; *Pool v. C., M. & St. P. R'y Co.* 56 id. 227; *Lanning v. N. Y. C. R. R.*

Co. 49 N. Y. 521; *Flike v. B. & A. R. R. Co.* 53 id. 549; *Booth v. B. & A. R. R. Co.* 73 id. 40; *Baker v. Allegheny Valley R. R. Co.* 95 Pa. St. 211; *Fay v. M. & St. L. R'y Co.* 30 Minn. 231; *O'Neil v. St. L., I. M. & S. R'y Co.* 9 Fed. Rep. 337. A brakeman and the conductor of an express train of thirteen coaches are not fellow-servants within the meaning of the rule that a master is not liable to a servant for an injury resulting from negligence of a fellow-servant. That rule is neither well founded, nor has it any application to this case. *Dixon v. Ranken,* 1 Am. R'y Cas. (Smith & Bates), 569; 1 Redf. on Railways, 522; Story on Agency (8th ed.), sec. 453d; *L. & N. R. R. Co. v. Collins,* 2 Duval (Ky.), 114; 5 Am. Law Reg. (N. S.), 272; *C., C. & C. R. R. Co. v. Keary,* 3 Ohio St. 201; *P., F. W. & C. R'y Co. v. Devinney,* 17 id. 197–210; *Berea Stone Co. v. Kraft,* 31 Ohio, St. 287; *Mann v. O. P. Works,* 11 R. I. 152; *N. & D. R. R. Co. v. Jones,* 9 Tenn. 27; *Dowling v. Allen,* 74 Mo. 13; *Gillenwater v. M. & I. R. R. Co.* 5 Porter (Ind.), 339; *Fitzpatrick v. N. A. & S. R. R. Co.* 7 id. 436; *Russell v. H. R. R. R. Co.* 5 Duer, 39.[1]

*Wm. F. Vilas,* for the respondent.

COLE, C. J.   The first error relied on for a reversal of the judgment is based on the refusals of the trial court to allow the plaintiff to make such proof as she could, as to the care used by the defendant in repairing the broken chains which connected the lever with the draw-bar.   When these chains are in order, a brakeman, while standing on the platform of the car, can uncouple the cars by means of the lever.   It appears that the conductor, when at Evansville, knew that the chains on the south end of the rear St. Paul car and the north end of the forward Winona car were broken, and one of these chains was in fact repaired at Baraboo.   These were

---

[1] See *Chicago, M. & St. P. R'y Co. v. Ross,* 112 U. S. 377; S. C., 24 Am. Law Reg. 94, with note by Charles L. Billings.—REP.

the two cars which were to be uncoupled when the train arrived at Elroy. But the chains, whether broken or not, in no way affect the security or operation of the train, but when they are broken the cars are usually uncoupled by brakemen going under the platform and inserting a pinch-bar, or chisel-bar — as it is called in the testimony — and prying the two jaws of the opposite draw-bars apart, thus disengaging the cars. The deceased was engaged in uncoupling the cars with this instrument at Elroy when he received the injury which caused his death.

On the trial, the plaintiff offered testimony which was calculated to show that if the conductor had used proper diligence, after he knew the chains were broken, in sending forward word to the repair shops of the company at Baraboo, the chains might have been repaired while the train stopped at that place. But this testimony was objected to and excluded on the ground that it was immaterial. The learned circuit judge probably thought that negligence could not be predicated on the failure of the conductor to have the chains repaired, even if that could have been done without delaying the train; and it is not clear that this view was not correct. For it must be remembered that whether the chains were broken or not did in no way affect the operation of the train. The train could be run with as much speed, ease, and safety with broken as with unbroken chains. They were a convenient appliance for uncoupling cars. But still, the testimony is uncontradicted that they were often broken, and that, even when in order, it was frequently necessary — "almost a daily occurrence" — for the brakeman to uncouple the cars, either above or beneath the platform, with the bar, because they could not be uncoupled by means of the lever and chain.

But assuming that it was the duty of the conductor, under the circumstances, to have the chains repaired, then, the learned counsel for the defendant says, in view of the spe-

cial verdict, the ruling of the court excluding the evidence is justifiable on two grounds. In the first place, he insists that all the testimony shows that the broken chain was not the proximate cause of the accident — as it clearly was not. As he says, it merely furnished an occasion for uncoupling the cars in another than the more usual way with the lever; but there was no risk of any injury from uncoupling with the bar while the cars were standing still.

It may be well to refer briefly to the circumstances attending the accident. It appears that the deceased was a brakeman on an express train of the defendant which ran from Chicago *via* Harvard, Evansville, Madison, and Baraboo, to Elroy. The train consisted of twelve or thirteen cars. At Elroy the train was divided, a sleeper and the hind coach being cut off or dropped at a certain point before they got to the depot platform, and left on the track to be afterwards attached to the Winona train, while the rest of the train went up to the depot on the St. Paul side and continued on to that city. The usual way of cutting off the hind cars was to do so at a certain point in the yard south of what is called the Winona switch, by the use of the lever and chain attached to the draw-bar. When the uncoupling could not be done in that way the train stopped at the same place, and the cars were uncoupled by the use of the pinch-bar, either above or beneath the car platform, as before explained. The train reached Elroy about 8:40 on the evening of the 7th of February. The engineer knew the chains were broken, and that it would be necessary to stop the train in order to uncouple the Winona cars. The engineer testified that he stopped the train south of the usual place at the distance of six or seven cars, because he could not see his way clear through the yard, where there were several switches, on account of the smoke from an engine which was blowing across the track. When the train stopped, the deceased and another brakeman jumped off the train and went under the cars to uncouple them with the pinch-bars.

Meantime, the conductor, who was in the baggage car, observing that the train was slowing up and had stopped before it reached the proper place, began signaling the engineer with his lantern to go ahead, not knowing that the brakemen were beneath the cars. The engineer, not being able to start his train directly forward because of its weight, "slacked back, and, in slacking back," caught the deceased's head between the platform of the cars and so pressed the skull that he died from the injury the next day.

In answer to questions submitted, the jury found that the injury to the deceased was caused by the want of ordinary care on the part of the conductor in signaling ahead without a signal from the brakeman. This finds the precise act of negligence which occasioned the injury; and it is plain that it was not because of the failure to have the chains repaired, assuming that negligence, under the circumstances, could be predicated upon that fact,— a point which in our minds admits of grave doubt. Be this as it may, certainly it was the negligence in giving the signal, not the failure to repair the chains, which was the direct proximate cause of the injury. The acts are distinct and independent, having really no connection with each other, the failure to repair being but remote, while the negligence in giving the signal was proximate, within the meaning of the cases. So, without intending to disturb the rule laid down by this court to which the learned counsel of the plaintiff refers, which is held to impose the duty upon the defendant of supplying and maintaining suitable cars and appliances for operating its road, and to take due care and use all reasonable means to guard against defects in its cars and locomotives which endanger the lives and limbs of its employees while in the performance of their duties, it seems to us this rule of law does not cover this case, inasmuch as the failure to repair the chains was not the cause of the accident. It was another independent act of negligence which caused it.

The learned counsel for the defendant further says that

the proposed evidence was rightly excluded because uncoupling the cars with the pinch-bar appeared to be one of the ordinary duties of the deceased, as brakeman, which he was liable at any time to be called upon to perform. Therefore, he says, it was one of the risks of his employment. The testimony is certainly clear that this mode of uncoupling cars was of frequent occurrence when the chains were not broken, for reasons which the witnesses state. There is surely ground for saying that it was one of the ordinary risks of the service, but whether it was or not we do not decide.

The other question raised by the record, which was so powerfully discussed by plaintiff's counsel, namely, whether the defendant is liable for an injury to the deceased resulting from the negligence of the conductor, has more than once been fully considered by this court and decided in the negative. These decisions go upon the well-settled doctrine in this state that the master is not liable to those in his employ for injuries occasioned by the negligence or misconduct of a fellow-servant in the same general business. Time and again efforts have been made to induce the court to depart from that rule of law, but these efforts have been fruitless. This court has felt constrained to adhere to the common law rule upon this subject, which is certainly sustained by the great current of authority.

The case of *Heine v. C. & N. W. R'y Co.* 58 Wis. 528, is a very recent decision upon the precise question raised here. There is not a fact or a circumstance in this case which can or should distinguish it from the *Heine Case.* It is true, there the injury was occasioned by the negligence of the conductor of a gravel train; — here, it was caused, as the jury finds, by the negligence of a conductor of an express train. But there is no ground for holding that the liability of the defendant should be greater in the one case than in the other. The legislature can change the rule of law, as it has once done, if it deems it wise to do so. But, in view of

the legislation, we do not feel called upon to overthrow our repeated decisions upon the point. In the language of Mr. Justice TAYLOR we say: " This court has clearly established the rule that an employee cannot recover of his principal or employer for an injury caused by the negligence of another employee engaged in the same business; and the fact that the negligent employee has the power to direct and order the acts and movements of the one injured, does not take the case out of such general rule." *Heine Case*, 532. We do not deem .it necessary to devote further discussion to the question.

It follows, from these views, that the circuit court was right in ordering judgment for the defendant on the special verdict.

*By the Court.*— The judgment of the circuit court is affirmed.