**Wytheville.**

NORFOLK & WESTERN RAILROAD COMPANY v. BROWN, BY &c.

JULY 11, 1895.

1. MASTER AND SERVANT—*Safe Machinery—Mismatched Couplings not Negligence per se.*—A master is bound to observe all the care which the exigencies of the situation reasonably require in furnishing machinery adequately safe to be used by the servant. But the use of cars of unequal heights and mismatched couplings in the same train is not negligence *per se* in furnishing safe machinery.

2. NEGLIGENCE—*Proximate Cause—Fellow Servant.*—The proximate cause of the injury in this case was the negligent driving back of the train a second time by the engineer or fireman of the train, who were the fellow-servants of the brakeman injured, and hence the company is not liable.

3. NEGLIGENCE—*How Proved—Burden of Proof.*—Negligence may be proved by circumstantial evidence as well as by direct testimony, but the burden of proof is on the party alleging the negligence. The evidence in this case, considered as on a demurrer to the evidence, fails to establish the negligence of the defendant.

Error to a judgment of the Circuit Court of the city of Roanoke, rendered September 15, 1894, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Watts, Robertson & Robertson,* for the plaintiff in error.

*Marshall McCormick, Roy B. Smith* and *J. Thompson Brown*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of the city of Roanoke, in favor of Hugh Brown against the Norfolk and Western Railroad Company for the sum of $10,000.

It appears from the record that the plaintiff, who was about nineteen years of age, was employed by the defendant company on the 15th of September, 1891, as a brakeman on the yards of the defendant company at Roanoke city. The crew of hands with which he was working was engaged chiefly in coupling and uncoupling cars, and in shifting them for the purpose of making up trains. On the 15th of October, one month after he commenced work, whilst engaged in uncoupling cars, his arm was so injured that it had to be amputated above the elbow. It further appears that he was under the control of the yardmaster (who it was admitted in argument, was the vice-principal of the defendant company), and that on the day he was injured, whilst engaged in his usual employment, he went up the yard upon the engine with the yardmaster, engineer, and fireman, to shift some cars to make up a freight train. When the engine reached a point opposite the cars which were to be shifted, the yardmaster ordered him to get off the engine, go over to the train, and cut loose two of the cars that were to be shifted; that the cars in a train on the yard were generally kept "taut," or tight, to prevent the coupling pins from being stolen. In order that the plaintiff might be able to cut the cars loose as directed, it was necessary for the couplings to be slacked, by backing the train. Before going between the cars, the plaintiff gave the signal to the yardmaster, who was some eight

cars nearer the engineer, to back the train. The yard-master repeated the signal, and the cars were backed, but not far enough to loosen the coupling pins. The plaintiff then went between the cars, attempted to take out one coupling pin, but was unable to do so, and turned to take out the other. Whilst attempting to get out this pin, and when it was about one-third of the way out, the train came back, caught his arm between the dead blocks or bumpers, and, whilst his arm was so fastened, the cars moved back about a car-length, when the train slacked up, and his arm was released. The record shows further that the cars which the plaintiff was attempting to uncouple, when injured, were of different heights, and the coupling was what is known as a mismatched coupling; and that the difficulty in pulling out the coupling pin was caused by the rear car pressing down the link with which the cars were coupled and causing it to hang against the coupling pin; that the cars which made up the train came from various roads, with various kinds of draw-heads, couplings, etc.; that the plaintiff had never seen a mismatched coupling before that one, and that he only noticed that this one was mismatched a few seconds before the accident happened. It further appeared that if the couplings had not been mismatched there would have been no difficulty in uncoupling them; that the plaintiff, prior to his employment with the defendant company, had worked one month in the machine shops at Roanoke, and four months as a brakeman on a mixed train on the Warrenton branch of the Richmond and Danville Railroad; and that the plaintiff's engagement with the defendant company was with the knowledge and consent of his parents.

The plaintiff bases his right to recover upon two grounds:

First. That the defendant company was negligent in requiring him to uncouple cars of unequal height, with mismatched couplings, without informing him of the increased

danger which he would incur in the performance of that duty.

Second. That the yardmaster, who had entire control of the railroad yard, and who was admitted to be the vice-principal of the defendant company, ordered the train to be moved back the second time when the plaintiff was injured, without warning to or signal from him, and whilst he was between the cars, endeavoring to uncouple them.

The first ground of negligence relied on involves the question whether the use of cars of unequal height and mismatched couplings, is *per se* negligence in the company, for which it must answer in damages to its employees if injury results to them therefrom in the performance of their duties.

It is well settled that the master, whether a natural or an artificial person, although he is not to be held as guaranteeing the absolute safety or perfection of his machinery, appliances, or other apparatus provided for the use of his servants, must observe all the care which the exigencies of the situation reasonably require in furnishing instrumentalities adequately safe. McKinney on Fellow Servants, sec. 24; Wood's Law of Master and Servant, sec. 329.

There was no defect in either of the cars which the plaintiff was uncoupling when injured. They were of different heights, and for that cause their couplings were mismatched, but the difference in the height of the cars was not so great that the bumpers on the cars missed each other when drawn together for the purpose of coupling or uncoupling them; but the bumpers of one struck the bumpers of the other, and prevented the cars from coming any nearer than if the cars had been of the same height. The record also shows that thousands of cars are carried over the defendant's road from all parts of the country, to and from its yards at Roanoke.

To hold that a railroad company was negligent in supplying safe and suitable machinery to its servants unless every

car in a train was of the same height, would, in our opinion, be requiring an extraordinary degree of care on its part. The effect of such a requirement would be to compel such company to have all its own cars changed to or made the same height, or to have only cars of the same height placed in the same train. It would also be required to have the railroad companies whose cars pass over its line make their cars of the same height, or put only those of the same height in the same train, or transfer all freight at its terminal points to other cars, or cease to do business with connecting lines.

Such a rule would be impracticable as well as expensive and burdensome to the railroad company, and would require the company to exercise not reasonable, but extraordinary care in supplying and maintaining suitable machinery and instrumentalities to its servants in the performance of the work required of them, and that too, when the defect complained of was obvious and patent, and could be seen as easily by them as by the master.

But, even if it was negligence, as we do not think it was, in the defendant company under the facts in this case, to have cars in the same train of unequal height, with mismatched couplings, we do not think that such defect was the proximate cause of the plaintiff's injury.

The mismatched couplings furnished an occasion for uncoupling the cars in a slower way than if they had not been mismatched, but there was no risk of any injury from such delay whilst the cars were standing still. It was the negligence in driving back the train, and not the mismatched couplings, which was the direct, proximate cause of the injury. The failure to have the cars of equal height and the driving back of the train, were distinct and independent, and had no connection with each other; the failure to have cars of equal height being but the remote cause, whilst the act of negli-

gence in driving the train back was the proximate cause within the meaning of the cases.

Mr. Cooley states the doctrine as follows: "If an injury. has resulted from a certain wrongful act or omission, but only through cr by means of some intervening cause, from which last cause the injury follcws as a direct and immediate consequence, the law will refer the damages to the last or proximate cause, and refuse to .trace it to that which is remote." Cooley on Torts, page 73. *Pease's Adm'r* v. *Chic. & North West. R. R. Co.*, 17 Am. & Eng. R. R. Cases, 527.

Having reached the conclusion that the proximate cause of the plaintiff's injury was the grossly negligent act of driving the train back a second time whilst the plaintiff was between the cars uncoupling them, the question arises: Was that act the act of the master, or the act of the fellow servant ?

And upon the answer to this question depends the right of the plaintiff to recover in this view of the case.

The record shows that the engineer and fireman were on the engine when the injury to the plaintiff was done. It shows, and it is admitted, that if the train was backed a second time, it must have been done by one of them; but the plaintiff insists that, whilst it is true that the engineer or fireman did so move the train, they were ordered to do so by the yardmaster, the vice-principal. If the yardmaster ordered the train to be moved back a second time, the defendant company is clearly responsible for the injury done.

It appears that the yardmaster was on the yard; that he ordered the plaintiff to uncouple the cars where he was injured; and that he repeated the signal of the plaintiff to move the train back the first time, and before the plaintiff went between the cars, but there is no evidence whatever that he afterwards gave any signal, or directed the train to be moved back until after the plaintiff was injured.

It is claimed by the plaintiff's counsel that the failure of the defendant company to call the yardmaster as a witness, and its failure to prove by the engineer, fireman, and brakeman, who were called as witnesses, that the yardmaster did not order the train to be backed a second time, .together with, the fact that he was on the yard and ordered the uncoupling to be done, and repeated the signal for the train to be moved back the first time, are sufficient grounds upon which to base a presumption that he did order the train to be moved back a second time. The burden rested upon the plaintiff to show that his injury resulted from the defendant's wrongful act. That fact must have been proved before he was entitled to recover. It is not necessary that negligence shall be proved by direct evidence. It can be proved by circumstantial evidence, as any other fact, but the circumstances relied on wholly fail to prove the fact in question.

The engineer, fireman, and brakeman, called as witnesses, denied that the train was moved back a second time at all. The fact that the defendant did not prove by the engineer, fireman, or brakeman, when on the stand, that the yardmaster had not ordered the train moved back the second time, when they denied that it had been so moved, and the fact that the defendant did not call the yardmaster to prove that he did not order the train back a second time, when there was no evidence whatever that he had done so, are not circumstances which prove, or even tend to prove, that he had ordered the train to back a second time. There was no proof whatever that the yardmaster ordered the train to be so moved, and, in the absence of such proof, it was not incumbent upon the defendant company to prove that no such order had been given.

The evidence in this case, considering it as on a demurrer to evidence, does not show that the defendant company failed to exercise ordinary care in supplying and maintaining suit-

Opinion.

able machinery and instrumentalities for the performance of the work required of the plaintiff. But if such machinery and instrumentalities had been defective, the evidence shows that the proximate cause of the injury done was the negligent act of a fellow servant. In this view of the case, it becomes unnecessary to consider the question whether or not the plaintiff was guilty of contributory negligence in placing his arm between the dead blocks or bumpers of the cars when uncoupling them, and having it between them when it was crushed by the backing of the train.

The judgment of the trial court must be reversed, the verdict set aside, and a new trial awarded, to be had in accordance with this opinion.

REVERSED.