[No. 7242.   Decided October 3, 1908.]

CARL CARLSON, *Respondent*, v. WEYERHAEUSER TIMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—NEGLIGENCE—SAFE PLACE—DEFECTIVE MACHINERY—USE OF OTHER SAFE AGENCIES. The working place provided for an edgerman in a mill is not rendered unsafe by the mere fact that live skids used to convey the lumber from the live rolls to the edger had become worn and too low, so that obstructions were liable to occur on the live rolls near the plaintiff's working place, where the live skids were merely a labor saving device for the conveyance of the lumber and the master had stationed employees whose duty it was to look after obstructions when the skids failed to perform their functions; since the live skids, even if too low, were not inherently dangerous, and their use not negligence so long as other safe agencies were employed; the proximate cause of the injury being the negligence of a fellow servant and not the defective condition of the skids.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered August 12, 1907, upon the verdict of a jury rendered in favor of the plaintiff, after a

[1] Reported in 97 Pac. 501.

trial on the merits, in an action for injuries sustained by an employee in a mill.   Reversed.

*Cooley & Horan*, for appellant.

*F. E. Anderson* and *Coleman & Fogarty*, for respondent.

RUDKIN, J.—The defendant owns and operates a sawmill, at the city of Everett, in this state, in which the plaintiff was employed as edgerman at the time of receiving the injuries complained of in this action.   A system of live rolls was installed and maintained in the mill for the purpose of conveying the sawed material from the main saw to the opposite end of the mill.   The edger at which the plaintiff was employed was situated about 80 or 100 feet back from the main saw, and about 10 feet to the right of the live rolls.   Lumber was diverted from the live rolls to the edger deck in the following manner:   An appliance known as a bumper, raised by means of a lever, would arrest the forward movement of the lumber along the live rolls; the weight of the lumber pressing down on a sheet-iron cover would cause a system of live skids to rise automatically; and live chains operating over the skids through grooves would then convey the lumber from the live rolls to the edger deck.

While the plaintiff was employed about the edger on the morning of August 17, 1905, a plank two inches thick, twelve inches wide, and about forty feet long was sent down over the live rolls by the offbearer.   The bumper was raised for the purpose of diverting the plank from the live rolls to the edger deck.   The end of the plank next to the edgerman was carried over by the live skids, but the opposite end caught or dragged on the covering between the live rolls.   While the plank was in this position, a heavy piece of timber sent down by the offbearer struck it and drove it against the plaintiff's leg, causing the injuries here complained of.   The following is the allegation of negligence set forth in the complaint:

"That at the time aforesaid the defendant operated, as a part of its said mill, live rollers to carry the lumber sawed

away from the head saw in said mill; that in connection with said live rollers the defendant operated skids, on which said skids were live chains; that said skids and live chains were at said time, and for a long time prior thereto, designed and used to divert from the live rollers and carry to the edger deck all lumber to be run through said edger machine, and on said date the defendant negligently permitted said skids, live chains and other machinery to be and remain in a defective, unsafe and dangerous condition, in that said skids were too short and were situated too low with reference to said live rollers and said edger deck and the cover hereinafter mentioned, and were so worn and loose at the joints that when said skids were operated for the purpose of diverting the lumber from said live rollers to said edger deck, as aforesaid, said skids failed to cause the lumber so to be diverted, to leave the said live rollers and the cover of the gearing adjoining said live rollers and situated between the said live rollers and the said edger deck, but permitted the lumber, so to be diverted as aforesaid, to lie and remain in dangerous proximity to said live rollers."

The answer denied the negligence charged in the complaint, and alleged contributory negligence, negligence of a fellow servant, and assumption of risk. The plaintiff had judgment below, and the defendant appeals.

Error in denying a motion for nonsuit and a motion for judgment at the close of all the testimony is the principal assignment upon which the appellant relies for a reversal. The testimony shows that the live skids to which we have referred were hinged on a shaft where they connected with the dead skids. Babbitting was placed around the shaft at these points for the purpose of taking the wear occasioned by the turning of the shaft. This babbitting would gradually wear away through the operation of the mill, and as it wore away, the live skids would naturally drop below the dead skids, to the extent of the wear. At the time of the accident complained of, there was testimony tending to show that the two center skids (there being four in all), were almost an inch lower than the dead skids with which they were con-

nected, although the testimony on the part of the appellant tended to show that the babbitting was only five-eighths of an inch thick in the first instance and that the drop in the skids could not exceed one-half inch. The testimony further tended to show that this condition had existed for about a month prior to the injury to the respondent; that by reason thereof the live skids had failed to convey the lumber to the edger deck as effectually as they had prior to that time; that up to about a month prior to the accident the live skids had never failed to convey lumber from the live rolls to the edger deck, unless the lumber caught on a piece of bark, a knot, or some other obstruction, so as to prevent the live skids from taking hold, and that there was no such obstruction under the plank which caused the injury to the respondent.

If the bare fact that the live skids were too low, and that this particular accident would not have happened had the skids been properly adjusted, is sufficient to fix liability upon the appellant, we are not prepared to say that the verdict is unsupported by the testimony, but even this is problematic. The appellant contends, however, that the live skids in question were merely a labor saving device; that an employee was placed in charge of the live rolls, whose duty it was to see that one piece of lumber was not run down upon another; that it had stationed another employee at the slasher saw, about forty feet back from the edger, provided with a picaroon, whose duty it was to pull the lumber from the live rolls when, for any reason, the live skids failed to perform their functions, and that these different agencies rendered the working place of the respondent perfectly safe, so long as the offbearer and slash sawyer performed the duties assigned them.

This contention must be sustained. Conceding that the live skids were too low and out of repair, they were not inherently dangerous. The only effect that could result from their condition was that they might fail to convey the lumber from the live rolls. But so long as the appellant had

made provision for such a contingency, and had placed a
man in charge of the live skids and slasher saw to aid these
mechanical devices in removing lumber from the live rolls, it
made the working place safe.   In *Bajus v. Syracuse etc. R.
Co.,* 103 N. Y. 312, 8 N. E. 529, 57 Am. Rep. 723, it was
contended that the accident was caused through the lessen-
ing of the power of a steam engine by a defect in the throttle
valve.   In answer to this contention, the court said:

"The defect in the throttle-valve, therefore, had no rela-
tion whatever to this accident, and the plaintiff's sole reliance
for the maintenance of his action must be upon the defective
condition of the flues and of the main steam valve, the sole
consequence of which was the diminished power of the engine.
These defects may have diminished the power of the engine
by several horse-power, so that the engine, instead of being,
for instance, eighty horse-power, was only seventy.   It mat-
ters not that this diminished power came from these defects,
nor how the engine came to be of only seventy horse-power.
The responsibility for the defects is no greater than it would
have been if the defendant had furnished a new engine of
precisely the same power."

And so here, if the appellant had supplied a mechanical
device to transfer one end of the lumber to the edger deck
and had stationed an employee at the other end to accom-
plish the same result by manual labor, it could not be said
that it failed in any duty it owed to the respondent, provided,
the two agencies furnished were sufficient to accomplish the
object in view.   The mere use of a defective appliance not in
itself dangerous is not negligence so long as other safe
agencies are employed to supply its deficiencies.   Nor was the
negligence which caused the injury in this case the joint or
combined negligence of the appellant and a fellow servant of
the respondent.   If the agencies supplied by the appellant
for transferring lumber from the live rolls to the edger deck
were reasonably safe and sufficient for that purpose, and an
accident resulted through the failure of a fellow servant to
perform the duty assigned him, the negligence of the fellow

servant and not the defective condition of the skids was the proximate cause of the injury. *Pease v. Chicago etc. R. Co.,* 61 Wis. 163, 20 N. W. 908; *Sullivan v. Wamsutta Mills,* 155 Mass. 200, 29 N. E. 516; *Norfolk etc. R. Co. v. Brown,* 91 Va. 668, 22 S. E. 496; *Williams v. Central R. Co.,* 43 Iowa 396; Cooley, Torts (2d ed.), 73.

We are therefore of opinion that the working place provided by the appellant was reasonably safe, as a matter of law, and that the respondent was not injured by reason of any negligence charged in the complaint.

The judgment is reversed, with directions to dismiss the action.

HADLEY, C. J., CROW, and MOUNT, JJ., concur.