# Richmond

BONNIE GRACE HUFFMAN, BY &c v. ELLA SORENSON, AND ANOTHER.

June 8, 1953.

Record No. 4065.

Present, All the Justices.

The opinion states the case.

*William W. Wharton, Charles Pickett,* for plaintiff in error.

*Wilbur C. Hall, Frank L. Ball, Boothe, Dudley, Koontz & Boothe,* for defendants in error.

SMITH, J., delivered the opinion of the court.

The plaintiff, Bonnie Grace Huffman, an eleven year-old girl, was severely injured when the automobile in which she was riding crashed into another car which had been left standing in the highway after a three-car collision that had happened a few minutes earlier.

The motion for judgment, filed on August 31, 1951, alleged that on October 7, 1950, plaintiff was a passenger in an automobile being operated by her father, George D. Huffman, which was proceeding west on U. S. Highway No. 50 in Fairfax county; that defendant Ella Sorenson negligently collided with an approaching car operated by defendant John Bodmer and that Bodmer negligently caused his car to collide with a third automobile operated by defendant Edward Willis Cook, and that as the direct and proximate result of the combined and several acts of negligence of all three of the defendants, the car in which the plaintiff was a passenger ran into the Cook car, thereby injuring the plaintiff.

The case came on for trial before a jury and after the plaintiff had presented all her evidence each defendant moved the court to strike the evidence. The plaintiff objected to these motions, but later withdrew her objection as to the motion of the defendant Cook. The court sustained the several motions to strike, whereupon the jury brought in its verdict for the defendants and judgment was entered thereon.

The plaintiff assigns as errors the action of the trial court in sustaining the motions of Sorenson and Bodmer to strike the plaintiff's evidence and its refusal to set aside the verdict of the jury and grant the plaintiff a new trial.

The sole issue in this case is whether the alleged negligence of Sorenson and Bodmer, in the first collision was a proximate cause of the injury received by the plaintiff in the later collision between the Huffman and Cook cars.

The accident occurred soon after 8:00 p. m., October 7, 1950, a rainy and foggy night, at a point approximately one mile east of Chantilly on U. S. Highway No. 50, a two-lane blacktop road

which runs generally east and west. At the scene of the accidents herein involved there is a slight upgrade to the west.

In order to prove her case against the three defendants, the plaintiff called them as adverse witnesses, and she relied entirely on their testimony to establish the facts surrounding the first collision which occurred before the Huffman car and the plaintiff appeared on the scene. Besides being examined by plaintiff's counsel, each of these defendants was cross-examined by one or more of the counsel for the other defendants.

Mrs. Ella Sorenson, driving a dark-colored Buick car, was proceeding west at a moderate speed and had turned on the directional indicator preparatory to making a right turn into a private road.

John Bodmer, an eighteen-year-old youth, accompanied by three young companions was driving east toward Fairfax, when he noticed the reflection from the lights of two cars approaching from the opposite direction, so he dimmed his lights and continued on at about thirty-five or forty miles per hour.

Edward Willis Cook, driving a dark-colored Chevrolet sedan, was proceeding west and for four or five miles had been following closely behind the Sorenson car as the two vehicles approached the scene of the accident. From his advantageous position, Cook had a clear view of what happened. He described Mrs. Sorenson's movements, as she approached the Bodmer car, as follows:

"Well, it seemed as if, when reflections of a car coming east popped over the hill, she touched the brakes, which she had been doing at every approaching car. When she touched the brakes, the car turned, skidded in the road, and when it skidded it went up the road—it went in an angle. I don't know how you all have the cars listed, but the car coming west—coming east [Bodmer's car], caught her hood."

Cook saw what was going to happen and applied his brakes in an effort to slow down and avoid a collision with the cars ahead, with the result that his car skidded at an angle of about forty-five degrees across the westbound or north lane. Cook's description continues as follows:

"Well, in my estimation it [the Sorenson car] skidded over the [center] line, and there was no—I couldn't see where the car [Bodmer's car] coming toward it could get by, and when it [Bodmer's car] hit, it skidded off of that one [the Sorenson car],

and by me being on an angle, too, it caught my left front fender and just skidded right off the grille and my left front fender and went over the bank.''

After this collision, Bodmer's car was completely in the ditch on the south side of the highway headed east. Mrs. Sorenson's car came to a stop with its front wheels on the pavement about three feet in from the edge and its rear end in the ditch on the north side of the road. Cook's car was sitting at an angle across the highway completely blocking the westbound lane, parallel to and about three feet from the Sorenson car. The front and rear lights on all three cars were ablaze at this time. The eastbound or south lane of the highway was not obstructed.

As a result of this collision Bodmer was rendered unconscious and Mrs. Sorenson and her companion, Mrs. Lohman, both elderly ladies, were considerably shaken up. Mrs. Sorenson received several broken ribs and cut her right knee. Neither Cook nor his companion, one Gordon, was injured, nor was the Cook car damaged to the extent that it could not have been driven away.

Cook describes his next movements as follows: ''We made plans for one to go to one car and one to go to the other to see if anybody was hurt. So I went to the Sorenson car, the Buick, and he [Gordon] went to the Bodmer car down the bank, and by that time the ladies in the Buick told me they weren't hurt bad, and he [Gordon] told me, he said, 'You better go down the road and see about the traffic coming up the road,' and I started walking down the road then.''

Cook walked down the road to the east about sixty feet when he saw a car approaching. This was the car in which the plaintiff was riding. Cook's testimony continues:

''Well, while walking down the road I see the reflection of a car coming toward me. So I started to wave my hand, after I could see the lights in front of me, and it didn't seem as if he was going to stop waving with one arm, so I started waving both arms, and my friend started hollering, 'You better get out of the road, because he's not going to stop,' * * *. So I saw he wasn't going to stop, and I jumped off the left side of the road over in the ditch, and by that time had passed me and made the impact.''

George David Huffman, the operator of the car that Cook had tried to flag down and the father of the plaintiff, testified that early on the morning of the accident he left his home in Mt.

Solon, Augusta county, Virginia, to go to Oxford, Pennsylvania, to attend a funeral. Accompanying him in the car were his wife, two daughters (one of whom is the plaintiff), a young son and a neighbor and his wife. Huffman had been driving since six o'clock that morning with the exception of about an hour's time at the funeral and occasional stops for servicing the car, etc.

Huffman approached the scene of his collision at a speed of between forty and forty-five miles per hour with his lights on low beam. He explained that he could see better in this manner, because of the atmospheric conditions. The other passengers in the car were either asleep or dozing. Huffman said he was not in a particular hurry, but the cows had not been milked and he was more than one hundred miles from home.

Huffman testified that he first noticed the Cook car standing in his path when it was about a hundred or a hundred and fifty feet away. He immediately applied his brakes and started straight to the Cook car "just like a sled sliding." When he saw that he was going to crash he made an effort to turn into the left lane which was clear, but his rear end skidded around and grazed the left side of the Cook car and his car finally came to a stop in the eastbound or south lane of the highway a short distance west of Mrs. Sorenson's car. He stated that he did not see Cook in the road signalling him to stop.

The plaintiff was sitting on the right side of the rear seat and took the full force of the blow when her father's car slid into the side of Cook's car.

There is conflict in the evidence as to the cause of the first collision between the cars of Mrs. Sorenson and Bodmer, but for the purpose of this decision we may assume that these two defendants were guilty of negligence which proximately caused the first collision. However, it does not necessarily follow that their negligence caused the collision in which the plaintiff was injured. As to how the latter occurred, there is no conflict in the evidence, which simplifies the difficult problem of ascertaining what really was the proximate cause of the plaintiff's injury.

It will be recalled that the plaintiff withdrew her objection to Cook's motion to strike the plaintiff's evidence as to him and at the bar of this court plaintiff's counsel absolved Cook of all responsibility for the plaintiff's injuries.

■ The question of proximate cause is generally for the determination of the jury, *Danville, etc., Ry. Co. v. Chattin,* 192

Va. 216, 64 S. E. (2d) 748, but when the facts are not in dispute and are susceptible of but one inference the question becomes one of law for the court. *Crist* v. *Fitzgerald,* 189 Va. 109, 52 S. E. (2d) 145; *Williams* v. *Greene,* 181 Va. 707, 26 S. E. (2d) 89; *Hubbard* v. *Murray,* 173 Va. 448, 3 S. E. (2d) 397.

Proximate cause is a concept difficult to define and almost impossible to explain conclusively. Each case necessarily must be decided upon its own facts and circumstances. *Price* v. *Burton,* 155 Va. 229, 154 S. E. 499. The proximate cause of an event is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces that event, and without which that event would not have occurred. *Wallace* v. *Jones,* 168 Va. 38, 190 S. E. 82; *Spence* v. *American Oil Co.,* 171 Va. 62, 197 S. E. 468, 118 A. L. R. 1120; *Roanoke Ry. & Elec. Co.* v. *Whitner,* 173 Va. 253, 3 S. E. (2d) 169. Stated another way, the proximate cause of an injury is that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, without which the injury would not have been inflicted, notwithstanding the other act, *Schools* v. *Walker,* 187 Va. 619, 47 S. E. (2d) 418; provided such injury could reasonably have been anticipated by a prudent man, in the light of attendant circumstances. *Wyatt* v. *Telephone Company,* 158 Va. 470, 163 S. E. 370, 82 A. L. R. 386. "* * * There is no yardstick by which every case may be measured and fitted into its proper place. In each case the problem is to be solved upon mixed considerations of logic, common sense, justice, policy and precedent. Authorities are useful to furnish illustrations 'of situations which judicious men upon careful consideration have adjudged to be on one side of the line or the other.'" *Scott* v. *Simms,* 188 Va. 808, 816, 51 S. E. (2d) 250.

The plaintiff in the case at bar places great reliance on the case of *Walker* v. *Stecher,* 219 Minn. 152, 17 N. W. (2d) 317. In this case the plaintiffs, Robert W. Walker and his wife, Judith Elizabeth Walker, were proceeding east in their car on Waysata boulevard in the city of Minneapolis. As the Walker car approached Penn avenue, a collision took place between it and a car owned and operated by Stecher, which was proceeding west. After the collision, the front end of the Walker car was headed into a snowbank on the south side of the highway and the rear end extended out into the highway in a general northwesterly

direction. It was so imbedded in the snowbank that it could not be moved. Both plaintiffs received some injuries in this first collision.. A short time after this accident, defendant Rerat approached from the west and struck the Walker car, causing plaintiff Judith Walker very serious injuries.

There was a verdict and judgment for the plaintiffs against both defendants, Stecher and Rerat. Stecher appealed, claiming that the negligence of Rerat was a superseding cause—a sole, independent, and intervening cause of the accident and the sole proximate cause of the plaintiffs' injuries.

In affirming the judgment the court said: "The position of the Walker car was such that the lights could probably not be seen by an on-coming car. It had been placed in that position by the negligence of defendant Stecher, taking the testimony most favorable to plaintiffs and the findings of the jury. The highway was slippery and icy, so that when Rerat saw the Walker car he could neither stop nor turn out, and he attempted to do both. Under these facts, it cannot be said that the jury was not justified in finding that a chain of events had been started by Stecher's negligence, so that he may be held liable for the resulting mishap. The position of the Walker car created an extra-hazardous road danger, and one likely to cause what did result, viz., a crashing into the Walker car by the first eastbound car coming along after Stecher, by his negligence, had caused the obstruction of the eastbound lane by the Walker car."

Another case relied on by the plaintiff is that of *Scott* v. *Simms, supra*. In this case, a nine-year-old child, Alva Rose Simms, was killed when a truck and a Ford car collided at an intersection in Culpeper causing the Ford car to be swung around where it crushed the little child against the rear bumper of a Buick automobile which was illegally parked at the curb.

In an action against the drivers of the three vehicles and the owner of the truck, the jury returned a verdict against all four defendants, but the trial court set aside the verdict against the driver of the Buick and entered judgment against the other three defendants.

The driver of the Buick was clearly guilty of negligence in that he had parked his car in a manner which violated a town ordinance, but the real question in the case was "whether this negligence of Hudson in parking the Buick was a proximate cause of the accident; that is, whether there was a causal con-

nection between his negligence and the accident, or whether the negligence of the driver of the truck and of the driver of the Ford was an intervening and superseding cause, which became the sole proximate cause of the death of the little girl.''

This court in answering the question thus posed, stated in 188 Va., at page 819:

''The jury could also have fairly inferred from the evidence that if the child had not been prevented by the parked car from proceeding straight across Main street she would not have been struck by the Ford as it was forced around clockwise from the blow of the truck; certainly that she would not have been crushed between the rear of the Ford and the rear of the Buick if the latter had not been parked there. In view of these permissible inferences, the negligence of the other two co-defendants resulting in the collision was not a superseding cause, but a concurring cause, combining with the continuing negligence of defendant Hudson to produce the result. Hudson's negligence had not at the time of the collision become inactive, but continued to be a condition operating harmfully with the negligence of his co-defendants.''

It is clear in *Scott* v. *Simms,* that Hudson's negligence placed the little girl in a perilous position and that his negligence continued to be a condition operating harmfully with the concurring negligence of his co-defendants in proximately causing the death of the child, just as Stecher's negligence in *Walker* v. *Stecher,* placed the Walker car in a position which created an extra-hazardous road danger and concurred with the negligence of Rerat in proximately causing the plaintiffs' injuries. But it cannot be said that the negligence of Mrs. Sorenson and Bodmer caused the westbound lane of Highway No. 50 to be obstructed by Cook's car. Cook alone caused his car to be situated on the highway as it was when the Huffman car struck it.

■ No responsibility for a wrong attaches whenever there intervenes the independent act of a third person between the defendant's negligence and the injury sustained, when the intervening and independent act of the third person affects and is the immediate cause of the injury. 13 M. J. 534, Negligence § 23. See generally *White* v. *Southern Ry. Co.,* 151 Va. 302, 144 S. E. 424; *Davis, D'r Gen.* v. *Ellis's Admx,* 146 Va. 366, 126 S. E. 658; 131 S. E. 815; *Connell* v. *Chesapeake, &c. R. Co.,* 93 Va. 44, 24

S. E. 467, 32 L. R. A. 792, 57 Am. St. Rep. 786; *Norfolk, &c., R. Co.* v. *Brown,* 91 Va. 668, 22 S. E. 496.

Examples of an intervening efficient cause as the proximate cause of a plaintiff's injury are illustrated in the following cases.

In *Wallace* v. *Jones, supra,* Jones recovered a verdict and judgment for personal injuries received as the result of two separate collisions involving four automobiles. The accidents occurred on the night of January 6, 1935, in a dense fog or mist. The plaintiff was riding as a guest in the car of one Sykes, who was slowly proceeding north in the proper lane on the George Washington Highway in Norfolk county.

The defendant, Wallace, proceeding south at a rapid rate of speed on the wrong side of the highway struck the Sykes car and pushed it to the left side of the road where it came to rest. The Wallace car continued on a distance of 100 yards where it went off the left side of the road and came to rest in a field.

About ten minutes later, a third car operated by one Todd and proceeding north, stopped on the right side of the road beside the Sykes car to offer assistance. In so doing, Todd's headlights partially obstructed the vision of one Woodard who, in a fourth car, was proceeding south toward the scene of the first collision.

The plaintiff had gotten out of the Sykes car and was standing in the road between the Todd and Sykes cars. Woodard, who did not see the Sykes car until he was very close to it on account of the glare from the headlights of the Todd car, tried "to slip between the cars" and in so doing struck the plaintiff.

In analysing the facts in the case, this court said in 168 Va., at page 44:

"There could be no causal connection between the negligence of Wallace, the defendant, and the injuries sustained by the plaintiff from the second collision, when there existed the intervening efficient causes shown by the evidence. The negligence of the defendant and the injuries so received by the plaintiff are entirely separated and the chain of causation interrupted by the several intervening events. Those events constituted new, efficient and independent causes which superseded the original act of negligence of the defendant.

"* * * In the case at bar the overwhelming evidence so clearly shows that the negligence of the defendant was the remote cause, if any cause at all, of the injuries the plaintiff received in the second collision, that we hold as a matter of law it

was not the proximate cause of those injuries. It follows that the trial court erroneously submitted the question to the jury.''

In *Hubbard* v. *Murray, supra,* a passenger bus, for the purpose of discharging a passenger, stopped with its left wheels on the paved portion of the highway and its right wheels on the shoulder in violation of statute, Michie's Code of 1936, § 2154 (133). A truck proceeding in the same direction, sideswiped the bus after it again started but before it had gotten entirely on the pavement. The truck ricocheted across the road and collided head on with a passenger car traveling in the opposite direction, which the plaintiff's decedent was driving. The testimony was undisputed that the driver of the truck had an unobstructed view of the bus for a distance of four hundred feet and that by the use of his brakes he could have brought his vehicle to a stop within one hundred feet or less. In setting aside a judgment against the bus owner and operator and entering judgment in their favor, we held that the negligence of the truck driver was the sole proximate cause of the accident and the fact that the bus was improperly stopped on the highway was merely a circumstance of the collision, or a remote cause thereof.

In *Roanoke Ry. & Elec. Co.* v. *Whitner, supra,* the collision occurred at night when the defendant's bus stopped on the right side of the paved portion of the highway, in violation of § 2154 (133) Michie's Code of 1936, to discharge a passenger and take on another. The plaintiff was riding as a passenger in a car following the bus at about the same speed at which the bus had been traveling. This car, which was owned and operated by one Chapman, collided with the rear of the bus. The jury returned a verdict against Chapman and the bus company, which on appeal was set aside and final judgment entered for the defendant bus company. We said that while the bus driver was negligent in stopping on the traveled portion of the highway, that negligence was not the proximate cause of the accident. The original negligence of the defendant bus company was broken by the independent, efficient and wrongful intervening negligence of the driver of the automobile in not seeing that the bus was coming to a halt and in not thereby taking proper precautions for the safety of his guest.

█ Similarly in the case at bar Huffman could have brought his automobile to a stop or driven by safely on the eastbound lane, which was not occupied by either the Sorenson or Cook

cars. But through lack of attention, lack of control, or excessive speed under the conditions then existing, one or all, he allowed his automobile to crash into Cook's car.

Except for occasional short stops, Huffman had been driving for more than thirteen hours under very trying circumstances. He was having difficulty in driving with poor visibility, because of the rain and fog and was driving with his lights on low beam, which, aside from the atmospheric conditions, considerably reduced his range of vision. Although driving conditions were unfavorable, Huffman was proceeding at a speed of between forty and forty-five miles per hour and when he finally saw Cook's car directly in his path and applied his brakes, his car went into a skid and out of control on the wet pavement. By the time he realized the car would not stop, it was too late to negotiate successfully the turn into the left or south lane where he had a clear and unobstructed path to clear Cook's car and avoid a collision.

Furthermore, Cook could have moved his car and he had a clear duty to do so. Code, §§ 46-189, 46-256. While his offer of assistance to the injured occupants of the Sorenson car and his valiant attempt to halt Huffman are worthy of commendation, the fact remains that if he had not left his car in the road, Hoffman would not have hit it and the plaintiff's injuries complained of would not have been suffered. Cook's omission to act set the stage for the events that followed and without that the collision between the Huffman and Cook cars would not have happened, notwithstanding any negligence on the part of the defendants.

The evidence in this case so clearly shows that the negligence of the defendants was the remote cause, if any cause at all, of the injuries the plaintiff received in the second collision, that we hold as a matter of law it was not the proximate cause of the plaintiff's injuries herein complained of. It follows that the trial court was correct in striking the plaintiff's evidence and entering judgment for the defendants.

*Affirmed.*