Michael **REDMAN**, Plaintiff,

v.

**SENTRY GROUP, INCORPORATED,
and Value–Tique, Incorporated,
Defendants.**

No. 91–0207–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Nov. 29, 1995.

---

Terry Kilgore, Gate City, VA, for Plaintiff.

Laura E. Wilson, Abingdon, VA, for Defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This action is before this court upon post-trial motion for judgment by Defendant, Sentry Group, Inc. ("Sentry"). Fed.R.Civ.P. 50(b). Previously, this court denied Sentry's motion for summary judgment as to the Plaintiff's claim alleging negligent design of a safe manufactured by Sentry. That issue was then presented to the jury at trial,[1] and a verdict in favor of the Plaintiff was returned. The Defendant now brings a motion for judgment in which it is alleged: (1) that the Plaintiff failed to establish that the design of the safe breached industry standards; (2) that the safe at issue is not "unreasonably dangerous" as a "matter of law;" (3) that the Plaintiff failed to establish that his damages were proximately caused by the Defendant; and (4) that the Plaintiff is precluded from recovering damages for loss of his coins un-

---

**1.** The Plaintiff had raised several bases for imposing liability. However, in a prior order, this court dismissed all such claims and only the claim regarding negligent design was presented to the jury.

der Virginia's economic loss rule. Having considered the Defendant's motion and the evidence presented at trial, this court finds that there is sufficient evidence to support the jury's verdict and award of damages.

## FACTS

This case regards the purchase of a Sentry safe by the Plaintiff, Michael Redman. According to Mr. Redman, he ordered a Sentry safe after seeing an advertisement for a "Sentry Supreme" safe in a nationally distributed coin collector's magazine. The advertisement was placed in the magazine by Value–Tique, Incorporated. Mr. Redman ordered the safe through Value–Tique, which then forwarded his order to Sentry. Mr. Redman received his Sentry safe in February 1987.

According to the advertisement, Sentry safes are fire-resistant and burglary deterrent, and therefore, would provide excellent protection for valuable coin collections. Also, a warranty from Sentry, which was included with the safe upon delivery, stated that the safe would provide "a degree of protection against burglary." Based upon such evidence, Mr. Redman testified that he placed his coin collection into the safe, believing that it would provide safety from fire and theft. Upon returning from vacation in December 1989, Mr. Redman testified that he found that the safe had been burglarized. Based upon other testimony at trial, it appears that a small pry-bar was used to open the door of the safe. Also, Mr. Redman's coin collection, which he kept inside the safe, was stolen.

## DISCUSSION

"To prevail in a products liability case under Virginia law, the plaintiff must prove that the product contained a defect which rendered it unreasonably dangerous for ordinary or foreseeable use." *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993). "In determining what constitutes an unreasonably dangerous defect, a court will consider safety standards promulgated by the government or the relevant industry, as well as the reasonable expectations of consumers." *Id.* (citation omitted). "Consumer expectations, which may differ from govern-

ment or industry standards, can be established through 'evidence of *actual industry practices*, . . . published literature, and from direct evidence of *what reasonable purchasers considered defective.'* " *Id.* at 420–21 (citation omitted) (emphasis added). Where there is no established industry norm, the court must rely on expert opinion in order to ascertain the applicable safety standard. *Id.* at 421 (citation omitted).

The Defendant, relying on *Alevromagiros*, contends that the Plaintiff's expert failed to establish that the safe fell below any industry standard. In *Alevromagiros*, the plaintiff was injured when a ladder on which he was standing fell. The plaintiff then brought a products liability action against the manufacturer of the ladder. At trial, the plaintiff's only expert testified to certain structural aspects of the ladder at issue. However, he admitted never having seen or tested a similar, undamaged ladder. He also testified to the absence of safety features found on other types of ladders. On cross examination, the plaintiff's expert noted the existence of advisory industry standards promulgated by two separate organizations: ANSI and UL. Although the plaintiff's expert admitted that the ladder complied with UL standards, he opined that the ladder failed to comply with the literal wording of the ANSI standard.

Upon motion by the defendant, the trial court granted a directed verdict and the Fourth Circuit affirmed. In reaching its decision, the Fourth Circuit noted that the plaintiff's expert "never performed the recommended physical tests to determine whether the ladder sold by Hechinger to Alevromagiros conformed to the published industry standards. [The plaintiff's expert] testified to no customs of the trade, referred to no literature in the field, and did not identify the reasonable expectations of consumers." *Id.* at 421. Because the plaintiff's expert failed to identify anything other than his own subjective belief that the ladder was defective, the *Alevromagiros* court found his testimony to be insufficient.

The present case is distinguishable from the facts at issue in *Alevromagiros*. First, Mr. Redman's expert, Mr. Sahay, testi-

fied that he had identified certain industry standards regarding burglary deterrent safes from those within the safe industry. As Mr. Sahay testified:

> I am told by the people who sell burglar resistant safes that they are constructed from a ¼ to ½ or maybe ¾ inch thick steel plate. That is the construction material for a burglary deterrent safe.
>
>     \*    \*    \*    \*    \*    \*
>
> Once again, my opinion, based on my discussion with professionals in the field; I am told that a burglar deterrent safe has to have a heavy construction essentially made up of a thicker gauge of steel plate. Either ½ to ¾ thick steel plates are used for the construction of burglar deterrent safes.
>
> This safe in no way qualifies to be a burglar deterrent safe the way it is made, based on industry practice.

Sahay Testimony at 16–17. Also, some of the most compelling evidence that the safe at issue fell below industry standards comes from the Defendant's expert, Mr. Beattie. According to Mr. Beattie's testimony:

> Q If I understand correctly, your testimony is that this safe does not meet the industry standards for a burglary resistant safe, is that correct?
>
> A That's correct.
>
>     \*    \*    \*    \*    \*    \*
>
> Q My question is; [sic] you've testified that you are familiar with industry standards to make safes burglary deterrent or burglary resistant?
>
> A Burglary resistant.
>
> Q Burglary resistant. If that's the term you want to use that will be fine with me. My question to you, sir, is could this safe be designed or manufactured differently under your direction and supervision, based on your knowledge and your expertise, and you're being an expert; could it have been changed to make it burglary

resistant according to industry standards that you know about?

> A No.
>
> Q It could not have been?
>
> A It would be a completely different device.

Beattie Testimony at 80–81. Thus, testimony from both experts indicate that the safe at issue failed to meet industry standards[2] regarding burglary deterrent/burglary resistant safes.

■ The Defendant also contends that the safe at issue is not "unreasonably dangerous" as a matter of law. As noted by the court in *Alevromagiros*, in determining what constitutes an unreasonably dangerous defect, a court is to consider government or industry standards as well as the reasonable expectations of consumers. *Alevromagiros*, 993 F.2d at 420. Consumer expectations, in turn, may be established from direct evidence of what reasonable purchasers considered defective. *Id.* In the present action, experts for both the Plaintiff and Defendant have stated that the safe fell below the industry standards regarding burglary deterrent/burglary resistant safes. Also, at trial the Plaintiff testified that it was his expectation that the safe would provide burglary protection due to the representation contained in the warranty. This court believes that a jury could find such an expectation to be reasonable and foreseeable where the manufacturer told purchasers of the safe that it would provide a degree of burglary protection. In sum, based upon the manner in which the term "unreasonably dangerous" has been defined by the Fourth Circuit, this court cannot say that as a matter of law the safe at issue could not be "unreasonably dangerous."

■ Next, the Defendant alleges that the Plaintiff failed to establish that any defect in the design of the safe was the proximate cause of the Plaintiff's loss. Proximate cause may be defined as that act or omission

---

**2.** Neither the Plaintiff nor Defendant proffered any published industry standards regarding burglary deterrent/burglary resistant safes. However, this court finds that there was sufficient evidence of industry standards in the form of industry practice and on the basis that experts for both the Plaintiff and Defendant agreed that they were familiar with industry standards and that the safe at issue fell below industry standards for burglary deterrent/burglary resistant safes. *See Alevromagiros*, 993 F.2d at 420–21.

which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces that event, and without which that event would not have occurred. *Huffman v. Sorenson*, 194 Va. 932, 937, 76 S.E.2d 183 (1953). This test has been held to incorporate both a foreseeability and a factual causation analysis. *See Banks v. Richmond*, 232 Va. 130, 136, 348 S.E.2d 280 (1986). Based upon the language contained on the warranty which was sent with the Sentry safe, it would be foreseeable that Mr. Redman would place valuable items inside the safe in the belief that they would be protected from theft. Similarly, if that safe was not designed so as to be burglary deterrent/burglary resistant, a foreseeable consequence could be the loss of items within the safe due to theft. Thus, this court finds that a jury could find that the foreseeability prong of the proximate cause analysis was met.

Factual causation requires that the harm would not have occurred but for the Defendant's negligence. *Etheridge v. Norfolk So. R.R. Co.*, 143 Va. 789, 800, 129 S.E. 680 (1925). This court will now focus on whether the Defendant's design defect was the "but for" cause of the harm suffered by the Plaintiff. The burglary at issue occurred sometime within a three day period during which the Redmans were on vacation. Although the safe was opened at the time the Redmans returned home, the length of time it took the burglars to open the safe is unknown. Testimony by the Plaintiff's expert and Officer Darnell, the investigating officer, indicated that the safe was opened with a small, twelve inch crowbar which was lying on the floor found beside the safe. According to both Mr. Sahay and Officer Darnell, marks around the door of the safe matched and were consistent with those made by such a crowbar. (Sahay Testimony at 9; Darnell Testimony at 30–31). Mr. Sahay also testified that the crowbar was able to force open the door of the safe because it was able to crack the plastic trimming on the body of the safe and bend the rods which protected the locking mechanism. (Sahay Testimony at 10). Once the rods were sufficiently bent, the locking head slid inside, allowing the lock to open, and thus, opening the door to the safe. *Id.* Further, Mr. Sahay noted that the sheet of steel which provided the backing to the locking devise is only about .32 inches in width. *Id.* at 13. Because such a thin piece of steel was used, Mr. Sahay opined that the construction of the safe was not that of a burglary deterrent safe as its construction was weak and easily bent. *Id.* at 15.

Considering the testimony of Mr. Sahay and Officer Darnell, and considering the fact that the jury could reasonably assume from the evidence presented that the burglar was working with only a small crowbar, it appears to this court that a reasonable jury could conclude that had the design not been defective (*i.e.*, had the locking mechanism been more secure and the construction less weak) entry into the safe would have been thwarted. In so holding, this court would note the unique difficulty presented when examining proximate cause in situations involving safes due to the fact that, theoretically, no safe is impregnable. In a defective design case regarding a safe, proximate cause analysis asks whether the safe would have been opened but for the defective design. If no safe is impregnable, given enough time, effort and the right equipment, then one could always conclude in the abstract, that any safe could be opened regardless of its construction and design. Given such a fact, how could any plaintiff recover under the proximate cause analysis? In answering that question, this court believes that the jury must consider only the facts and evidence before it, drawing any reasonable inferences from the circumstantial evidence. *See Huffman v. Sorenson*, 194 Va. 932, 937, 76 S.E.2d 183 (1953).

There was no evidence presented in this case which would indicate that the burglars had any tool or used any tool other than the small crowbar. Also, there is no evidence to suggest that the burglars indulged in a lengthy stay in the Redmans' home. Nor is this a case where the safe was carried away from the premises, and the case is devoid of any evidence or inference that the burglars intended or had the means to carry the safe off the premises. One can speculate on the foregoing scenarios and many others which could possibly impact on the issue of proximate cause, but would necessarily depart

from the facts actually proven in this case. Therefore, given the facts and evidence presented, the jury could reasonably conclude from the circumstantial evidence that the burden of establishing proximate cause was met.

 Finally, the Defendant contends that the Plaintiff is barred from recovery under Virginia's economic loss rule. According to the Virginia Supreme Court, most jurisdictions have followed the economic loss rule, which "limit[s] tort recovery against parties not in privity with the purchaser of a product to cases in which negligent manufacture or design has resulted in a product which constitutes a danger to the safety of persons or property other than the product itself." *Sensenbrenner v. Rust, Orling & Neale Architects, Inc.*, 236 Va. 419, 424, 374 S.E.2d 55 (1988), *aff'd* 870 F.2d 655 (4th Cir.1989); *see also Richmond, Fredericksburg and Potomac R.R. Co. v. Davis Indus., Inc.*, 787 F.Supp. 572, 576 (E.D.Va.1992) (noting that privity is not required where there is an alleged injury to property); Restatement (Third) of Torts: Products Liability (Definition of "Harm to persons or property": Economic Loss Rule) § 6 & cmt. e. (Harm to the plaintiff's property other than the defective product itself). That is, a plaintiff in tort may not recover only economic losses. *Id.* Economic loss has been defined as:

> "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property ... as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold."

*Sensenbrenner*, 236 Va. at 423 n. 3, 374 S.E.2d 55 (quoting *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 752, 435 N.E.2d 443, 449 (1982)). Accordingly, the economic loss rule does not prohibit recovery for property loss, unless the recovery is sought for damages to the defective product itself. *Id.*, 236 Va. at 424, 374 S.E.2d 55 (citation omitted). The Plaintiff in the instant case attempts to recover the cost of the loss of his coins—a property

loss claim. Because the Plaintiff's negligence claim regards property loss, privity is unnecessary and the Plaintiff is not barred from recovery by the economic loss rule. *Accord* Memorandum Opinion of September 12, 1995 (holding that the Plaintiff's loss does not fall within the definition of economic loss).

## CONCLUSION

In conclusion, this court finds that there was sufficient evidence to uphold the jury verdict in favor of the Plaintiff. The Defendant's motion is DENIED.

## ORDER

For the reasons set forth in the Memorandum Opinion entered this day in the above-referenced action, it is hereby ORDERED that the motion for judgment by Defendant Sentry Group, Inc. is DENIED.