Theodore ALEVROMAGIROS, Plaintiff–Appellant,

v.

HECHINGER COMPANY; White Metal Rolling and Stamping Corporation of Atlanta, GA, Defendants–Appellees.

No. 92–1546.

United States Court of Appeals, Fourth Circuit.

Argued March 3, 1993.

Decided May 21, 1993.

---

John A. Keats, Fairfax, VA, argued for appellant.

Thomas L. Appler, argued, (Robert R. Vieth, on brief), McGuire, Woods, Battle & Boothe, McLean, VA, for appellees.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and RESTANI, Judge, United States Court of International Trade, sitting by designation.

## OPINION

RESTANI, Judge:

This is a products liability case, brought by an injured individual against the manufacturer and seller of a ladder allegedly containing a design defect.[1] At trial, the expert witness for plaintiff testified that the ladder did not conform to advisory industry standards, although he had never tested or examined an

---

1. The complaint asserted that the manufacturer acted negligently in designing the ladder, and that the seller was negligent in not discovering the defect before sale. The complaint also alleged that the defendants breached implied and express warranties of safety and fitness.

undamaged model of the ladder. At the close of plaintiff's case, the court granted defendants' motion for a directed verdict on the ground that plaintiff had not established the violation of any standard. We affirm the district court's decision, holding that a directed verdict in a products liability case is appropriate where an expert witness fails to prove that advisory industry standards have been violated or that those standards fall below an acceptable level.

## I

Plaintiff-appellant Theodore Alevromagiros is the owner of a chain of eating establishments called Fantastic Family Restaurants, which offer Greek and American cuisine. In the summer of 1989, while conducting repairs on his restaurant in Herndon, Virginia, Alevromagiros directed a contractor to buy a ladder from defendant-appellee Hechinger Company ("Hechinger"). On behalf of Alevromagiros, the contractor purchased a six-foot high stepladder manufactured by defendant-appellee White Metal Rolling and Stamping Corporation of Atlanta, Georgia ("White Metal"). No accident occurred when the ladder was used at that time.

Several months later in December 1989, Alevromagiros climbed on the ladder to reset some ceiling tiles. While resetting the tiles, Alevromagiros felt "some bending or something" in the ladder. He then fell to the floor, severely fracturing his arm. Two eyewitnesses to the incident confirmed that the ladder twisted, causing Alevromagiros to fall backwards.[2]

The only expert witness to testify at trial was Stanley Kalin, called to the stand by plaintiff-appellant Alevromagiros. The district court found that Kalin, who received a bachelor's degree in industrial engineering from Johns Hopkins University, was qualified to be an expert witness.[3] On direct

examination, Kalin drew the judge's and jury's attention to the bent and twisted appearance of the ladder from which Alevromagiros fell. In particular, he noted the buckling of the spreader bars, which connected the front and rear portions of the ladder. The front part of the ladder was also not aligned with the rear part. Kalin continued on to point out the absence of safety features such as triangular bracing, better designed spreaders, and stiffeners.

Alevromagiros did not seek to introduce into evidence an undamaged ladder otherwise exactly like the one involved in the accident. After discovering that local Hechinger stores no longer carried that particular model, Alevromagiros stopped searching. Therefore, Kalin never conducted a physical examination of an identical but undamaged ladder to determine its safe or unsafe design. During Kalin's testimony, Alevromagiros sought to introduce a competitor's ladder containing safety features not present in the ladder sold by Hechinger to Alevromagiros. The district judge refused to admit the competitor's ladder on the grounds that "I don't believe that the expert can bring in one ladder from a competitor and attempt to make a standard out of that." The judge also sustained an objection to Kalin's testimony about the safety features of other ladders because "[t]he question is not what other ladders have."

On cross-examination, Kalin acknowledged that there were advisory industry standards promulgated by the American National Standards Institute (ANSI) and Underwriters Laboratories (UL). Kalin also admitted the existence of a UL acceptance file, indicating that the ladder at issue in the case complied with UL standards. He did not agree that the ladder conformed to ANSI standard 14.2, which requires a metal spreader or locking device of sufficient size and strength to securely hold the front and back sections of a ladder in the open position.[4] Although Kalin

---

2. Although there was some conflicting testimony as to the placement of the ladder in relation to a partition, none of the witnesses claimed that Alevromagiros lost his balance and caused his own fall by leaning over the partition to fix the ceiling tile. The witnesses also did not agree as to whether the ladder had fallen or still remained standing after the accident.

3. Kalin, who works for The Institute for Safety Analysis, Inc., has testified more than 100 times in court.

4. At his deposition, Kalin said he had no opinion on whether the ladder conformed to the ANSI standards. He explained at trial that he thought the defendant's attorney was requesting numeri-

failed to perform the recommended ANSI tests on an identical but undamaged ladder, he maintained that the construction of the ladder was not in accordance with the literal wording of the standard. He also stated that, "tragically," the ANSI and UL standards did not require triangular braces on the rear portion of a ladder.[5]

After Alevromagiros had presented all of his evidence, Hechinger and White Metal moved for a directed verdict. In discussing the motion, the district judge noted that Kalin "didn't testify to any standards" and "no tests ... have been performed." The judge inquired of the parties,

> Don't we have to have more than just somebody saying, I am an industrial engineer and I have looked at this ladder, it is the only one I have really looked at for this purpose, but I don't like it, there ought to be something else done to it? Doesn't there have to be more than that to make out a case of defective design?

The district judge ultimately granted defendants' motion for directed verdict, from which plaintiff Alevromagiros now appeals.

## II

■ The United States District Court for the Eastern District of Virginia had jurisdiction over this case on the ground of diversity of the parties. *See* 28 U.S.C. § 1332(a)(1) (1988). The case is properly before this court as an appeal of a final judgment. 28 U.S.C. § 1291 (1988). Because the situs of the accident was Virginia, the law of that state will apply in this diversity action. *See* Restatement (Second) of Conflict of Laws § 146 (1971) ("In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties...").

■ There are two issues presented by this appeal: 1) whether plaintiff introduced sufficient evidence to withstand a motion for directed verdict; and 2) whether the judge erred in refusing to admit physical or testi-

monial evidence regarding a competing product. The district court's grant of a directed verdict will be upheld "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In reviewing the district court's decision, this court must view the evidence in the light most favorable to the non-movant. *Herold v. Hajoca Corp.*, 864 F.2d 317, 319 (4th Cir. 1988), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989). A judge's evidentiary ruling will be disturbed only upon a showing of abuse of discretion. *See El-Meswari v. Washington Gas Light Co.*, 785 F.2d 483, 487 (4th Cir.1986).

### A

■ To prevail in a products liability case under Virginia law, the plaintiff must prove that the product contained a defect which rendered it unreasonably dangerous for ordinary or foreseeable use. In addition, the plaintiff must establish that the defect existed when it left the defendant's hands and that the defect actually caused the plaintiff's injury. *Marshall v. H.K. Ferguson Co.*, 623 F.2d 882, 885 (4th Cir.1980) (citing *Logan v. Montgomery Ward & Co.*, 216 Va. 425, 219 S.E.2d 685 (1975)). The product need not incorporate the best or most highly-advanced safety devices. *Id.* at 886.

■ In determining what constitutes an unreasonably dangerous defect, a court will consider safety standards promulgated by the government or the relevant industry, as well as the reasonable expectations of consumers. *Sexton v. Bell Helmets, Inc.*, 926 F.2d 331, 337 (4th Cir.) (applying Kentucky law), *cert. denied*, — U.S. ——, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991). Consumer expectations, which may differ from government or industry standards, can be established through "evidence of actual industry practices, ... published literature, and from direct

---

cal data and test results, rather than a simple opinion.

**5.** On redirect, Kalin demonstrated that safety features, such as triangular braces, appearing in

an ANSI diagram were not present in the ladder used by Alevromagiros. He later conceded that the diagram was merely a representation of a ladder, not an illustration of the ANSI standards.

evidence of what reasonable purchasers considered defective." *Id.*[6]

■■■ "Absent an established norm in the industry," a court is constrained to rely on the opinion testimony of experts to ascertain the applicable safety standard. *Ford Motor Co. v. Bartholomew,* 224 Va. 421, 430, 297 S.E.2d 675, 679 (1982). The credibility of competing experts is a question for the jury only if the party with the burden of proof has offered enough evidence to sustain a verdict in its favor. *See Lust v. Clark Equipment Co.,* 792 F.2d 436, 438–39 (4th Cir.1986) (refusing to uphold JNOV for defendant where the plaintiff's expert offered ample proof that the product did not contain safety features present in the voluntary industry standards).

The cases that plaintiff-appellant cites are distinguishable either on the law or on the facts. In *Carney v. Sears, Roebuck & Co.,* the Fourth Circuit reversed a decision made in favor of a store that sold a ladder which subsequently broke, thereby injuring plaintiff. 309 F.2d 300, 306 (4th Cir.1962). The legal significance of *Carney,* which has no application here, is that a judge may not release a defendant from liability for a manufacturing defect solely because the product has been in the possession of plaintiff for fifteen months. *Id.* at 305.

*Bartholomew,* relied upon heavily by Alevromagiros, presents a markedly different factual situation. *Bartholomew* involved the design of a car whose dashboard instruments indicated the car was in park when the gear shift lever was not fully in the park position. 224 Va. at 427, 297 S.E.2d at 678. The court found that the automobile industry had not yet promulgated safety standards relating to this particular problem. Consequently, the court admitted the opinion of plaintiff's expert that the car's design was unreasonably dangerous, based on information published by the National Highway Traffic Safety Administration, consultation with other experts, and experiments with transmission systems in at least three types of cars. *Id.* at 430, 297 S.E.2d at 679. In the case at bar, there is neither an absence of industry standards, nor an expert opinion based on extensive testing and published reports.

■■■ In the case before us, Kalin concededly never performed the recommended physical tests to determine whether the ladder sold by Hechinger to Alevromagiros conformed to the published industry standards. He testified to no customs of the trade, referred to no literature in the field, and did not identify the reasonable expectations of consumers. His comment that the advisory industry standards "tragically" did not require the use of triangular braces does not constitute proof that industry standards are inadequate. It is merely another example of his own subjective opinion. Like the Fifth Circuit, we are unprepared to agree that "it is so if an expert says it is so." *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 421 (5th Cir.1987).

Viewing the evidence in the light most favorable to the non-movant, this court finds that Alevromagiros had not proven that the ladder was unreasonably dangerous and therefore no reasonable jury could have concluded that he was entitled to judgment. The district judge's grant of a directed verdict for the defendants-appellees Hechinger and White Metal is affirmed.[7]

### B

■■■ Alevromagiros argues that his case was stymied by his inability to introduce into evidence a competing ladder with more safety features than the ladder he purchased from Hechinger. The district judge refused to admit the competing ladder or any testi-

---

6. We recognize that conformity with industry custom does not automatically absolve a manufacturer or seller of a product from liability. Nevertheless, a product's compliance with industry custom "may be conclusive when there is no evidence to show that it was not reasonably safe." *Turner v. Manning, Maxwell & Moore, Inc.,* 216 Va. 245, 251, 217 S.E.2d 863, 868 (1975).

7. Although we note with disapproval the numerous objections by defense counsel during Kalin's testimony, counsel's conduct does not affect our ultimate decision. *See Hoppe v. Midwest Conveyor Co.,* 485 F.2d 1196, 1202–03 (8th Cir.1973) ("A witness ... deserves greater courtesy and a less restricted atmosphere to present his testimony than was provided here. Opposing counsel should never attempt to frustrate the examination of a witness by argumentative objections.")

mony about it, saying "[s]imply because certain manufacturers put certain features on ladders, that is not the test." The judge later remarked, "bringing in one particular competitor's ladder ... and making that an industry standard, that is terribly misleading."

Both parties rely on Eighth Circuit cases which have directly addressed the issue of admitting samples of competitive merchandise in a products liability case. *Hoppe v. Midwest Conveyor Co.* found that the comparative design of a competing product was relevant in a case concerning a "highly complicated piece of machinery." 485 F.2d 1196, 1202 (8th Cir.1973). The later case of *Kontz v. K–Mart Corp.* refused to apply *Hoppe* to a fact situation involving a simple folding lawn chair. 712 F.2d 1302, 1304 (8th Cir.1983). As in *Kontz*, the jury in the case currently being appealed did not need to see examples of competing products in order to understand the nature of the product at issue. The jurors easily could have been misled or confused by the assumption that one competing product represented the relevant industry-wide standard. Therefore, the judge did not abuse his discretion in refusing to admit the competing product into evidence.

### III

In conclusion, a plaintiff may not prevail in a products liability case by relying on the opinion of an expert unsupported by any evidence such as test data or relevant literature in the field. Such a plaintiff may not introduce a single example of a competing product and purport to make it a standard for the industry. He or she must establish the violation of industry or government standards, or prove that consumer expectations have risen above such standards. Because we find insufficient evidence to withstand a motion for directed verdict, the judgment of the district court is therefore

*AFFIRMED.*