**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DANIEL J. HARTNETT,
<u>Plaintiff-Appellant,</u>

and

SHEILA HARTNETT,
<u>Plaintiff,</u>

No. 97-2156

v.

GLOBE FIREFIGHTER SUITS,
INCORPORATED,
<u>Defendant & Third Party</u>
<u>Plaintiff-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Catherine C. Blake, District Judge.
(CA-95-468-CCB)

Argued: May 8, 1998

Decided: June 29, 1998

Before ERVIN and MOTZ, Circuit Judges, and BEEZER,
Senior Circuit Judge of the United States Court of Appeals
for the Ninth Circuit, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Steven Roy Kiersh, Washington, D.C., for Appellant.
Christopher Redmond Dunn, DECARO, DORAN, SICILIANO,

GALLAGHER & DEBLASIS, L.L.P., Lanham, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Daniel J. Hartnett appeals from the district court's decision to exclude the testimony of Hartnett's expert witness and to deny Hartnett's motion to amend his complaint. Finding no error, we affirm.

I.

On October 29, 1992, Hartnett, who worked as a civilian firefighter for the Navy, sustained burns and scarring on his arm when the fire protection coat he wore failed to protect him while he participated in a live training drill. Hartnett and his wife, Sheila, filed suit against Globe Firefighter Suits, Inc., asserting claims for products liability and loss of consortium. Globe, in turn, filed a third-party complaint against Minnesota Mining and Manufacturing Company (3M), the manufacturer of the reflective tape used on the sleeves of the coat, seeking full contribution and indemnification.

The Hartnetts proffered a single expert witness, Ira Block, Ph.D., in support of their claims. Dr. Block testified in deposition that the reflective tape on Harnett's fire protection coat was defectively designed. He opined that the tape ignited upon exposure to flame and allowed hot gases to permeate through the fabric of the coat, which ultimately burned Hartnett. Dr. Block concluded that the reflective tape burned before the other parts of the coat and that the tape rendered the coat inherently dangerous for its intended purpose of firefighting.

2

Dr. Block based his conclusion on a makeshift test that he performed, in which he exposed the coat and reflective strips to flames from a Bunsen burner and a cigarette lighter. He did not design his test to measure the coat against the industry standards promulgated by the National Fire Protection Association (NFPA); he did not produce a test capable of reproduction or in accordance with any standardized procedures; and he did not measure the test protocols in any way beyond his own visual observation and using his hand as a heat detector. Moreover, Dr. Block conceded that the coat (with reflective tape) probably satisfied the NFPA industry standards, and indicated he had no information that the coat (with tape) fell below consumer expectations.

On November 26, 1996, Globe and 3M filed motions in limine to exclude Dr. Block's testimony. They argued that Dr. Block did not properly test the coat and that he relied on no authority other than his own subjective opinion in reaching his conclusions. Soon thereafter, 3M filed a notice of intent to rely on Virginia law, and requested that the district court dismiss the Hartnetts' strict liability and loss of consortium claims as not cognizable under Virginia law. The district court ruled that Virginia law applied and granted 3M's motion to dismiss those claims. In response, the Hartnetts requested leave to amend and clarify their complaint to assert claims for negligence and breach of warranty. See Morgen Indus., Inc. v. Vaughan , 471 S.E.2d 489, 492 (Va. 1996).

The district court then granted the motions to exclude Dr. Block's testimony, concluding that it could not "find that Dr. Block's testimony [was] sufficient evidence that the reflective trim sewn on to the sleeves of the [fire protection] coat was defective" because, like the expert "in Alevromagiros [v. Hechinger Co. , 993 F.2d 417, 421 (4th Cir. 1993)], `[h]e testified to no customs of the trade, referred to no literature in the field, and did not identify the reasonable expectations of consumers.'" The court also denied the Hartnetts' motion to amend, reasoning that (1) the Hartnetts filed the motion well after 3M filed its notice to rely on Virginia's nonrecognition of the strict products claim, and only after the court dismissed that claim, and (2) the amendment would be futile because, other than Block's excluded testimony, the Hartnetts had proffered no evidence to establish that the coat was defective. Daniel Hartnett appeals.

3

II.

On appeal, Hartnett argues only that the district court abused its discretion in excluding the testimony of Dr. Block and erred in denying the motion to amend the complaint. Both contentions lack merit.

Under Virginia law, a products liability plaintiff

> must prove that the product contained a defect which rendered it unreasonably dangerous for ordinary or foreseeable use. . . . In determining what constitutes an unreasonably dangerous defect, a court will consider safety standards promulgated by the government or the relevant industry, as well as the reasonable expectations of consumers. Consumer expectations, which may differ from government or industry standards, can be established through evidence of actual industry practices, . . . published literature, and from direct evidence of what reasonable purchasers considered defective. Absent an established norm in the industry, a court is constrained to rely on the opinion testimony of experts to ascertain the applicable safety standard.

Alevromagiros, 993 F.2d at 420-21 (internal footnotes, citations, and quotation marks omitted). Thus, Virginia law does not favor reliance on expert testimony to prove a products liability claim. If a plaintiff does rely on an expert, that expert's testimony must be supported by evidence "such as test data or relevant literature in the field." Id. at 422.

Dr. Block's testimony does not meet these requirements. Dr. Block never identified any government standards and failed to test the coat to determine whether it met the industry standards as promulgated by the NFPA. Rather, he conceded that most manufacturers of fire protection coats use 3M's reflective tape, suggesting that this complied with the industry standard. Dr. Block made no "detailed inspection" in conducting his test, nor did he cite specific published materials upon which he relied to reach his conclusion. Cf. Freeman v. Case Corp., 118 F.3d 1011, 1016-17 (4th Cir. 1997). He performed a single test that involved no controlled procedures or standard measurements. Finally, Dr. Block cited nothing suggesting that the use of the reflec-

4

tive trim did not meet consumer expectations. Consequently, the district court did not abuse its discretion in granting Globe's and 3M's motions to exclude the testimony of Dr. Block.

Nor did the district court err in refusing to grant the motion to amend the complaint. To prevail under either a negligence or a breach of warranty theory in Virginia, Hartnett would have to prove that the fire protection coat was unreasonably dangerous for its ordinary or foreseeable uses and that the defect existed at the time the product left the manufacturer's control. See Morgen Indus. , 471 S.E.2d at 492; Alevromagiros, 993 F.2d at 420-21. Here, Dr. Block provided Hartnett's only evidence that the coat was unreasonably dangerous. That evidence having been properly excluded for failure to meet the minimum threshold of reliability for expert testimony, amendment of the complaint would have been futile. See Island Creek Coal Co. v. Lake Shore, Inc., 832 F.2d 274, 279 (4th Cir. 1987) (discussing futility as a basis for denying a request to amend a complaint).

AFFIRMED

5