**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-2112**

---

JOHN WITTEN TUNNELL,

Plaintiff - Appellant,

versus

FORD MOTOR COMPANY,

Defendant - Appellee.

---

**No. 06-1799**

---

JOHN WITTEN TUNNELL,

Plaintiff - Appellant,

versus

FORD MOTOR COMPANY,

Defendant - Appellee.

---

Appeals from the United States District Court for the Western District of Virginia, at Danville. Norman K. Moon, District Judge. (CA-03-74-NKM; 4:03-cv-00074-nkm)

---

Argued: May 24, 2007                    Decided: August 1, 2007

---

Before MICHAEL, Circuit Judge, WILKINS, Senior Circuit Judge, and David C. NORTON, United States District Judge for the District of South Carolina, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Fred Dempsey Smith, Jr., Martinsville, Virginia, for Appellant. Wayne D. Struble, BOWMAN & BROOKE, L.L.P., Minneapolis, Minnesota, for Appellee. **ON BRIEF:** Robert L. Wise, BOWMAN & BROOKE, L.L.P., Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This is a products liability case brought by John Witten Tunnell, a severely injured automobile passenger, against Ford Motor Company. Tunnell was injured when the Ford Mustang in which he was riding collided with a utility pole and caught fire. Tunnell claims that the Mustang was defectively designed because it did not incorporate a collision-activated switch to cut off power to the electrical wiring that started the fire. Before the case went to the jury, the district court determined that Tunnell had not proffered sufficient evidence to show that the Mustang was defective. The court concluded that Tunnell's expert did not establish that the proposed battery cutoff switch would result in a net improvement in the Mustang's safety. For this reason, the district court ordered that the expert's testimony be excluded and that a directed verdict be entered in Ford's favor. We agree with the district court's determinations. We further agree with the district court's denial of Tunnell's request for a new trial as a sanction for Ford's discovery misconduct. The district court's orders are therefore affirmed.

I.

In November 1999 Tunnell was seriously injured when the 1999 Ford Mustang in which he was riding collided with a utility pole and caught fire. He suffered severe burns that required

3

amputation of both legs. The fire was caused by crush damage to the wiring and connectors of the Mustang's dashboard wiring harness. Tunnell sued Ford for breach of implied warranty, alleging that the Mustang was defective and unreasonably dangerous for foreseeable uses because it was not equipped with a battery cutoff device (BCO). He claims that a BCO would have prevented the fire by automatically cutting off power to the dashboard wiring harness upon impact.

Tunnell proffered the testimony of an automotive engineering expert, Jerry Wallingford, who explained how dashboard wiring harnesses present a fire hazard and how BCOs could effectively address the problem. Wallingford testified that Jaguar (a Ford company) had been using a BCO since 1988. He also presented the results of a test of a prototype BCO he had developed for the 1999 Mustang. In his test Wallingford separated from the dashboard wiring harness certain circuits he identified as critical for safety, including power windows, power door locks, and hazard lights. The test showed that, when triggered, the prototype cut off power to the dashboard wiring harness, while allowing power to flow to the critical circuits. Wallingford testified that similar BCOs were being manufactured, and used in BMWs and Jaguars, before 1999, and that any of these devices would prevent electrically generated post-collision fires. He concluded that the absence of

4

a BCO made the Mustang unreasonably dangerous in the event of a collision, but it did not make the car defective.

The district court struck Wallingford's testimony as unhelpful and unreliable because (1) he was contradictory about whether the absence of a BCO rendered the Mustang defective; (2) he did not show that a risk-benefit analysis favored use of BCOs; (3) he confined his defectiveness opinion to collisions like Tunnell's rather than the full range of ordinary and foreseeable uses; and (4) his methods did not comply with several of the factors set forth in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). Without the stricken evidence, the court determined that Tunnell had not proved that consumers had a reasonable expectation of no fires in their vehicles. The court therefore granted Ford's motion for a directed verdict.

Tunnell filed a motion for a new trial, claiming that the district court erred in striking Wallingford's testimony. The district court denied the motion. Several months later, Tunnell discovered that Ford had failed to produce documents regarding a BCO manufactured by Tyco and moved again for a new trial. The court denied the motion because the evidence replicated information Tunnell already knew. Tunnell appeals.

II.

In a products liability action based on allegations of defective design, a plaintiff must prove that a defect rendered the product unreasonably dangerous for foreseeable uses. Dreisonstok v. Volkswagenwerk, A.G., 489 F.2d 1066, 1073 (4th Cir. 1974). A defective product is considered unreasonably dangerous if it violates government or industry safety standards or if it does not conform to consumers' reasonable expectations. Alevromagiros v. Hechinger Co., 993 F.2d 417, 420 (4th Cir. 1993). Consumer expectations may be established by evidence of actual industry practices, published literature, or direct evidence of what reasonable purchasers consider defective. Id. at 420-21.

No industry standards require automakers to install BCOs. Tunnell therefore sought to prove by Wallingford's testimony that consumers reasonably expected automakers to employ BCOs to prevent post-collision electrical fires. Tunnell argues that the district court erred in striking Wallingford's testimony and that, even if the decision to strike was proper, Tunnell did not need Wallingford's testimony to avoid a directed verdict.

A.

We review the district court's decision to strike Wallingford's testimony for abuse of discretion. Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 200 (4th Cir. 2001).

6

A plaintiff may rely on expert testimony if it is relevant and reliable. Fed. R. Evid. 702. The district court determined that Wallingford's testimony did not satisfy either of these requirements. First, the court determined that his testimony was irrelevant because it did not establish that the Mustang was defective. Wallingford failed to testify unequivocally that the absence of a BCO rendered the Mustang defective for foreseeable uses. Instead, he stated that the Mustang was "unreasonably dangerous" in collisions, J.A. 3444, but that he would not "call it defective." J.A. 5371. A court may exclude testimony that does not tend to show that a suggested product change was necessary to meet existing standards or reasonable consumer expectations. See Sexton v. Bell Helmets, Inc., 926 F.2d 331, 338 (4th Cir. 1991). The district court thus did not abuse its discretion in striking Wallingford's testimony because he appeared to conclude that BCOs would be a desirable added safety device rather than a necessary correction for a defective product.

The district court's second reason for striking Wallingford's testimony was his failure to employ sound methods to demonstrate that a BCO would be a reasonable solution to the problem of post-collision electrical fires. The reliability assessment of expert testimony is guided by a flexible analysis of several factors: (1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been

7

subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its application; and (4) whether the theory or technique enjoys general acceptance within the relevant community. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149-50 (1999) (citing Daubert, 509 U.S. at 592-94). Wallingford opined that his prototype would prevent electrical fires while avoiding some of the safety risks posed by BCOs that cut off power to all dashboard circuits. He did not, however, test the prototype (or any other available BCOs) to determine whether they would create safety problems in other scenarios or whether the choice of critical circuits, to which power would be maintained, was sufficient to ensure passenger safety. Wallingford conceded he had not analyzed whether circuits not identified as critical--including the dome light, car horn, taillights, radio, and power point--provided significant safety benefits that would be lost due to operation of the prototype. There was also no evidence that Wallingford's BCO solution had been subjected to peer review or had been generally accepted within the automotive engineering community. Absent more extensive testing by Wallingford or acceptance of the BCO solution by his peers, the district court's decision to strike Wallingford's testimony was not an abuse of discretion.

In light of its decision to strike Wallingford's testimony regarding the Mustang's defectiveness, the district court determined that Tunnell had presented insufficient evidence of a product defect and directed a verdict for Ford. We review de novo a district court's grant of a directed verdict "to determine whether the evidence presented at trial, viewed in the light most favorable to [the non-moving party], would have allowed a reasonable jury to render a verdict in [its] favor." Freeman v. Case Corp., 118 F.3d 1011, 1014 (4th Cir. 1997).

Tunnell argues that the district court should not have directed a verdict against him because a prior discovery sanction against Ford in this case relieved Tunnell of the burden of proving a defect. The sanction took the form of an instruction that consumers "expected that there would be no fires in collision and noncollision situations where such fires could be prevented by design and construction, balancing known risk and dangers against the feasibility and practicability of applying any given technology." J.A. 2086. In other words, the instruction allows the conclusion that consumers expected no fires in their vehicles if reasonable means were available to prevent them. The instruction answers one part of the defectiveness inquiry: what consumers expected. It does not, however, establish that a consumer's expectation of no fires would always be reasonable. The

9

instruction leaves to Tunnell the task of showing that BCOs could prevent fires in a feasible and practicable way that would not create new safety hazards outweighing their safety benefits. The district court thus did not violate the law of the case by requiring Tunnell to proffer evidence that consumers' expectations of no fires were reasonable.

C.

Tunnell alternatively argues that he proffered sufficient evidence of defectiveness independent of Wallingford's stricken testimony, and that the district court erred in requiring the evidence of reasonableness of consumer expectations to take the form of a risk-benefit analysis. Our court has stated that such balancing is needed to determine whether consumer expectations are reasonable. See Redman v. John D. Brush & Co., 111 F.3d 1174, 1181 (4th Cir. 1997). Generally, a design change that avoids one danger while creating others of a similar or greater magnitude does not conform to consumers' reasonable expectations. See id. (unreasonable to consider a fire resistant safe defective because it was not burglar resistant where burglar resistance would decrease fire resistance). The district court correctly required some evidence that the benefits of BCOs outweighed their risks to support a conclusion that the Mustang's lack of a BCO deviated from reasonable consumer expectations. Because Tunnell's evidence did not show that the risks associated with a power cutoff were

10

outweighed by the benefits from a decreased possibility of post-collision electrical fires, the district court correctly granted Ford's motion for a directed verdict.

## III.

Tunnell's remaining argument relates to the district court's treatment of Ford's discovery misconduct. In December 2005, after the district court had issued the directed verdict, Tunnell moved for sanctions and a new trial, claiming that Ford had failed to produce documents related to BCOs manufactured by Tyco. The district court granted the motion for sanctions and denied the motion for a new trial.

Federal Rule of Civil Procedure 60(b)(3) allows the district court to grant a new trial if a party engages in fraud, misrepresentation, or other misconduct. The moving party must (1) have a meritorious defense; (2) prove misconduct by clear and convincing evidence; and (3) show that the misconduct prevented the moving party from fully presenting his case. Schultz v. Butcher, 24 F.3d 626, 630 (4th Cir. 1994). The court then balances the policy favoring finality of judgments against the need to do justice to the moving party to determine whether a new trial is appropriate. Square Constr. Co. v. Wash. Metro. Area Transit Auth., 657 F.2d 68, 71 (4th Cir. 1981). We review the court's decision for abuse of discretion. Id.

11

The district court denied Tunnell's motion for a new trial because Tunnell had not shown that Ford's discovery misconduct prevented him from fully presenting his case. Where a party is able to fully prepare and present his case notwithstanding the adverse party's misconduct, the district court may deny relief under Rule 60(b)(3). Karak v. Bursaw Oil Corp., 288 F.3d 15, 21-22 (1st Cir. 2002). Although Ford may have failed to turn over documents related to the Tyco BCO and its use in Aston Martin vehicles, Tunnell had learned much of the information contained in the undisclosed Ford documents from other sources during discovery. We agree with the district court that this independent knowledge enabled Tunnell to pursue any further development of the evidence he desired. Ford's actions thus did not prevent him from fully and fairly presenting his case and the district court did not abuse its discretion in denying Tunnell's motion for a new trial.

## IV.

In sum, Tunnell's evidence failed to support a finding that automobile consumers reasonably expected no electrical fires in 1999. We therefore affirm the district court's order granting Ford a directed verdict. We also affirm the district court's denial of Tunnell's request for a new trial based on Ford's

12

discovery misconduct because it did not prevent Tunnell from fully presenting his case. The district court's orders are therefore

AFFIRMED.