UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1914

FRANK SUTTON,

Plaintiff – Appellant,

v.

ROTH, L.L.C.; JOHN DOE; MCDONALD'S CORPORATION,

Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:07-cv-00779-CMH-TRJ)

Argued:  October 28, 2009            Decided:  January 21, 2010

Before KING, SHEDD, and DAVIS, Circuit Judges.

Vacated and remanded by unpublished opinion. Judge Shedd wrote the majority opinion, in which Judge King joined.  Judge Davis wrote a dissenting opinion.

**ARGUED:** Beverly G. Stephenson, B. G. STEPHENSON, LP, Fairfax, Virginia, for Appellant.  David Drake Hudgins, HUDGINS LAW FIRM, Alexandria, Virginia, for Appellees.  **ON BRIEF:** Joseph J. Jablonski, Jr., B. G. STEPHENSON, LP, Fairfax, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Frank Sutton appeals the district court's orders granting (1) judgment as a matter of law in favor of Roth, L.L.C. and John Doe (collectively, "Roth") and (2) summary judgment in favor of McDonald's Corporation. For the reasons set forth below, we vacate both orders and remand this case for further proceedings consistent with this opinion.

I.

A.

We review both orders de novo, viewing the evidence in the light most favorable to Sutton, the nonmoving party. Buckley v. Mukasey, 538 F.3d 306, 321 (4th Cir. 2008). Around 1:30 a.m. on August 8, 2005, Sutton, along with his wife, adult son, and a work associate (Bill Giffon), stopped to refuel at the Daniel Boone Truck Stop in Duffield, Virginia. While refueling, the group noticed a McDonald's restaurant attached to the truck stop's convenience store. Roth owns this restaurant as a franchisee of McDonald's Corporation.

Because their vehicles were too big to fit through the restaurant's drive-thru, Sutton and his entourage went inside the restaurant/convenience store to order. When they entered, Sutton noticed that the partition between the McDonald's restaurant and the convenience store was closed. Sutton asked

2

the convenience store clerks whether the McDonald's restaurant was still open, and they replied that it was. Sutton returned to the partition and called for a McDonald's employee, but no one answered. The convenience store operators then informed Sutton that the McDonald's employees were outside, behind the restaurant.

Sutton went outside and found two young women in McDonald's uniforms talking with two young men. Sutton asked them if the restaurant was still open, and they replied affirmatively. Sutton walked back inside, and the two women met him at the partition. Sutton placed and paid for his order. He then watched the two women go into the restaurant. Shortly thereafter, the women returned with Sutton's change and his order. Sutton's group then went to a small table in the convenience store to eat.

When Sutton bit into his fried chicken sandwich, "grease flew all over his mouth." J.A. 250 (Testimony of Bill Giffon). As Sutton described it, "the grease from the inside of the chicken sandwich spread out all over my bottom lip, my top lip, down onto my chin." J.A. 192. Sutton immediately dropped his sandwich, and his wife took ice out of her drink, put it into a napkin, and began to dab his face. Almost instantly, blisters appeared on Sutton's lips.

3

After tending to his face, Sutton sought out the two McDonald's employees to report the incident. Unable to find them inside, Sutton went back outside, where he found them again talking with two young men. He told them what had happened and showed them the blisters on his lips and chin. One of the women responded, "This is what happens to the sandwiches when they aren't drained completely." J.A. 12. After they finished eating, Sutton and his entourage left the truck stop.

The next morning Sutton discovered that some of the blisters on his lips had bled onto his pillow. At this point, he realized that his burns were worse than he initially thought. Two days after the accident, he returned to the restaurant to file an incident report with the manager on duty. Four days after the accident, Sutton went to an urgent care facility for medical attention; there he was told that the burns would heal naturally over the next month.

Sutton's lips continued to bother him over the next few months. Because sunlight and heat irritated his burns, Sutton's lips consistently bothered him during his work of refurbishing and assembling outdoor amusement rides. Sutton declined specific jobs if he knew the necessary work would aggravate his lips.

Seven months after the accident Sutton sought additional treatment for his injuries. Dr. Donnelly, an ear, nose, and throat specialist, treated Sutton with lip balm, and he

4

instructed Sutton to avoid excessive exposure to sunlight. Sutton visited Dr. Donnelly on a regular basis for ongoing observation and treatment.

B.

Sutton sued Roth and McDonald's Corporation for negligence and breach of the warranty of merchantibility under Virginia law, seeking $2,000,000 for lost wages, medical bills, and pain and suffering. McDonald's Corporation thereafter moved for dismissal and/or summary judgment, arguing that under its franchise agreement Roth was not its agent. In support of this motion, McDonald's Corporation relied solely on an attached affidavit authored by its senior counsel David Bartlett. McDonald's Corporation did not attach the franchise agreement to the motion. In response, Sutton argued that the court should not consider the McDonald's Corporation's affidavit because it was replete with hearsay. In the alternative, Sutton argued that, even if the court considered the affidavit, Sutton needed more discovery to oppose the motion, though he did not file an affidavit under Federal Rules of Civil Procedure Rule 56(f). Finally, Sutton argued that, even if the court did not grant him more discovery, there was still a question of fact about apparent agency and his claim for a breach of the warranty of merchantibility did not rely on an agency relationship between McDonald's Corporation and Roth. The district court granted

5

summary judgment for McDonald's Corporation because it found that McDonald's Corporation had demonstrated that there was no agency relationship between Roth and McDonald's Corporation and Sutton had failed to rebut McDonald's Corporation with any contrary evidence. It did not address Sutton's alternate arguments. Following this motion, Sutton and Roth proceeded to trial.

Roth moved in limine to exclude its employee's statement that "This is what happens to the sandwiches when they aren't drained completely." J.A. 12. Roth argued that the statement was inadmissible hearsay. In opposition, Sutton argued that the statement was admissible under Federal Rule of Evidence 801(d)(2)(D) because it constituted an admission by a party-opponent's agent. The district court granted the motion, finding that the statement was inadmissible under Rule 801(d)(2)(C) because there was no evidence that Roth's employee had authority to make binding admissions on Roth's behalf. The court did not address the statement's admissibility under Rule 801(d)(2)(D).

During trial, Sutton, Giffon, and Sutton's wife testified.[1] At the close of Sutton's case-in-chief, Roth moved for judgment as a matter of law pursuant to Federal Rules of Civil Procedure

---

[1] Sutton also introduced the deposition of Dr. Donnelly. J.A. 255.

Rule 50. Roth argued that Sutton failed to present any evidence of a standard of care, which is a necessary element to a products liability case under Virginia law. Sutton argued that Virginia's unwholesome foods jurisprudence controlled his claim and, therefore, he need not introduce any standard of care. See generally Bussey v. E.S.C. Rest., Inc., 620 S.E.2d 764, 767 (Va. 2005). The district court agreed with Roth.

The district court then found that because Sutton had failed to demonstrate any evidence of a standard of care, his claim failed as a matter of law. The district court also found, sua sponte, that Sutton was contributorily negligent by failing to "exercise reasonable care to see that [he wasn't] eating something too hot."[2] J.A. 304. Consequently, the district court entered judgment for Roth and dismissed the jury.

## C.

On appeal, Sutton first argues that the district court erred in excluding Roth's employee's statement about the consequences of failing to properly drain fried chicken. Second, Sutton argues that the district court erred in granting Roth

---

[2] We note that the defendants' answer asserted that Sutton's claims were barred by contributory negligence. J.A. 16. However, contributory negligence was not mentioned again until the district court, without prompting or suggestion by either litigant, relied on it as an alternative rationale for its order granting judgment as a matter of law. J.A. 303-04.

judgment as a matter of law because he presented a prima facie case of negligence through Roth's employee's excluded statement and evidence of Sutton's injury. In the alternative, Sutton argues that, even without the statement, he presented a prima facie case of negligence under Virginia's unwholesome foods jurisprudence. Finally, Sutton argues that the district court erroneously granted summary judgment to McDonald's Corporation because it relied on an affidavit replete with hearsay, and that it failed to address Sutton's request for more discovery, Sutton's apparent agency argument, and Sutton's breach of the warranty of merchantibility claim.

## II.

We first review the district court's order granting Roth judgment as a matter of law. Judgment as a matter of law is appropriate only when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. Fed. R. Civ. P. 50(a)(1).

### A.

As noted, the district court granted Roth judgment as a matter of law because it found that Sutton had failed to present any evidence of a standard of care. Sutton argues that the court erred because under Virginia's unwholesome foods jurisprudence,

8

a plaintiff need not present evidence of a standard of care. See Bussey, 620 S.E.2d at 767.

Under Virginia law, a plaintiff need not present evidence of a standard of care in an unwholesome foods case. Id. However, to trigger unwholesome foods law, a plaintiff must show "that the food product contained foreign matter." Harris-Teeter, Inc. v. Burroughs, 399 S.E.2d 801, 802 (Va. 1991). Here, there is no evidence that Sutton's fried chicken sandwich contained any substance foreign to fried chicken.[3] Therefore, the district court properly required Sutton to present evidence of a standard of care, and we now must determine whether, under the law of Virginia, Sutton presented evidence of a standard of care at trial.

Under Virginia law, government standards, industry standards, or the reasonable expectations of consumers can constitute evidence of a standard of care in a products liability case. Alevromagiros v. Hechinger Co., 993 F.2d 417, 420 (4th Cir. 1993) (applying Virginia law) (citing Sexton v.

---

[3] Sutton argues that a sub-dermal, pocket of hot grease is foreign to a fried chicken sandwich. Though Sutton is right that hot grease is a foreign substance to chicken generally, hot grease is necessary and expected (even desired) for fried chicken. See Harris-Teeter, 399 S.E.2d at 802 (finding that a plastic decoration on a child's birthday cake was not a foreign substance).

Bell Helmets, Inc., 926 F.2d 331, 337 (4th Cir. 1991)).

Describing these different types of evidence, we have said that:

> While government and industry standards are readily identifiable for a given product at a given time, the reasonable expectation of purchasers requires a factual examination of what society demanded or expected from a product. This may be proved from evidence of actual industry practices, knowledge at the time of other injuries, knowledge of dangers, the existence of published literature, and from direct evidence of what reasonable purchasers considered defective at the time.

Sexton, 926 F.2d at 337. However, before we review the record to determine whether Sutton presented any evidence of a standard of care, we must determine whether the district court considered all of Sutton's admissible evidence.

                              B.

Sutton argues that the district court erred by excluding Roth's employee's statement about the consequences of failing to drain fried chicken sandwiches.[4] The district court excluded this statement under Federal Rule of Evidence 801(d)(2)(C), but Sutton argues (and has consistently argued) that it is admissible under Rule 801(d)(2)(D).

We review evidentiary rulings for an abuse of discretion. Precision Piping and Instruments, Inc. v. E.I. du Pont de

---

[4] Sutton also argues that the district court erroneously excluded an incident report. We do not reach this issue because it is unnecessary to our holding.

Nemours and Co., 951 F.2d 613, 619 (4th Cir. 1991). A district court abuses its discretion "if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." Brown v. Nucor Corp., 576 F.3d 149, 161 (4th Cir. 2009) (internal quotation marks and citations omitted). Evidentiary rulings are also "subject to harmless error review." United States v. Brooks, 111 F.3d 365, 371 (4th Cir. 1997).

Under Rule 801(d)(2)(D), a statement is not hearsay if it is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." To introduce a statement under 801(d)(2)(D) the record must reveal "independent evidence establishing the existence of the agency." United States v. Portsmouth Paving Corp., 694 F.2d 312, 321 (4th Cir. 1982).

Here, the record reveals that the declarant was wearing a McDonald's uniform, helped fill Sutton's order, and responded to questions about McDonald's while working at a McDonald's restaurant. We hold that this is sufficient evidence of agency for Rule 801(d)(2)(D). Therefore, regardless of the statement's inadmissibility under Rule 801(d)(2)(C), this statement is clearly admissible under Rule 801(d)(2)(D). The district court, therefore, abused its discretion in excluding Roth's employee's statement. We further find this error to be harmful because, as

11

discussed below, this statement constitutes evidence of a standard of care.

C.

After reviewing all of Sutton's admissible evidence, we find that Sutton presented sufficient evidence of a standard of care in the form of reasonable consumer expectation. First, Roth's employee's statement constitutes evidence of "actual industry practice[]." Alevromagiros, 993 F.2d at 420. Second, Sutton's companions' reactions to his injury are evidence of "what reasonable purchasers considered defective." Id. at 421. Sutton's wife removed ice from her soda, put it in a napkin, and tried to put it on Sutton's chin. Giffon described the incident by saying "grease flew all over his mouth." J.A. 250 (emphasis added). Sutton threw the sandwich down. The consumers did not expect Sutton's fried chicken sandwich to contain a hot pocket of grease, and Roth's employee's statement serves as strong corroboration for the reasonableness of this expectation. These facts reveal "what society demand[s] or expect[s] from" a fast-food, fried chicken sandwich. Sexton, 926 F.2d at 337. Under Virginia law, this constitutes evidence of a standard of care. The district court, therefore, erroneously granted judgment as a

matter of law in favor of Roth.[5] For these reasons, the district court's decision must be reversed and remanded. Having found that the district court erroneously granted Roth judgment as a matter of law, we next review the district court's order granting McDonald's summary judgment.

III.

Though we review a grant of summary judgment de novo, we review a district court's refusal to allow discovery prior to entering summary judgment for abuse of discretion. Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002).

Shortly after Sutton filed suit and before the court entered a scheduling order for discovery, McDonald's Corporation moved for summary judgment and/or dismissal, arguing that it had no agency relationship with Roth. McDonald's Corporation relied on an affidavit by its general counsel averring that McDonald's Corporation had no control over Roth's franchise and its

---

[5] Acting sua sponte, the district court also found that Sutton was contributorily negligent for biting into the hot sandwich. J.A. 303-04. Even if it were appropriate for the court to raise this issue in the manner it did, it is not contributory negligence as a matter of law to merely bite into food served hot by a restaurant. Therefore, to the extent necessary, we reject the district court's alternative rationale for granting Roth judgment as a matter of law.

13

franchise agreement. However, McDonald's Corporation did not attach the franchise agreement to its motion.

In response, Sutton argued that the district court should not consider McDonald's Corporation's affidavit because it was based on hearsay. Sutton also argued that, even if the court considered the affidavit, he needed more discovery to rebut McDonald's factual allegations. Sutton explained that he needed more discovery about the actual relationship between McDonald's Corporation and Roth in order to determine if Roth was indeed an agent of McDonald's Corporation. Sutton also specifically requested the franchise agreement. However, Sutton did not attach an affidavit asserting contrary facts or file an affidavit under Federal Rules of Civil Procedure Rule 56(f). Finally, Sutton argued that, even if the court denied him more discovery, summary judgment was improper because there was a question of fact about apparent agency and that his warranty of merchantibility claim against McDonald's Corporation did not rely on a theory of agency.

In an opinion rendered six days after the scheduling order provided for discovery to begin, J.A. 7, the district court granted summary judgment and dismissed McDonald's Corporation because it found that McDonald's Corporation had "affirmatively shown that no agency relationship exist[ed] with [Roth]" and that Sutton had failed to assert any facts to rebut this

14

conclusion. J.A. 36. The district court did not address Sutton's other arguments.[6]

We first address Sutton's request for more discovery. Generally, a district court should decline to grant summary judgment where the non-moving party has not had the opportunity to discover information necessary to oppose summary judgment. Harrods Ltd., 302 F.3d at 244 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986)). Typically, a party makes this argument via a Rule 56(f) affidavit. However, if the nonmoving party's filing "serve[s] as the functional equivalent of [a Rule 56(f)] affidavit, and if the nonmoving party was not lax in pursuing discovery, then we may consider whether the district court granted summary judgment prematurely, even though the nonmovant did not record its concerns in the form of a Rule 56(f) affidavit." Harrods Ltd., 302 F.3d at 245 (internal quotation marks and citations omitted).

Here, Sutton's memorandum in opposition to summary judgment effectively served as a Rule 56(f) affidavit. At the time of

---

[6] Sutton subsequently filed a motion to reconsider this decision, noting that the court did not address his arguments about the hearsay contained in the McDonald's Corporation's affidavit, more discovery, apparent agency, or the warranty of merchantibility. J.A. 41-50. At oral argument on this motion, the district court declined to hear argument on these independent claims; rather it relied on the reasoning in its initial order. J.A. 64.

McDonald's Corporation's motion and Sutton's response, the court had yet to enter a scheduling order for discovery. Sutton's filing requested more discovery, specifically identified what discovery he needed, and sought discovery about a fact-intensive issue, agency. Further, there is no claim that Sutton failed to pursue discovery diligently. Therefore, the district court abused its discretion by failing to address Sutton's request for more discovery, and we must vacate the district court's grant of summary judgment in favor of McDonald's Corporation.

Further, under these facts, we hold that Sutton was entitled to additional discovery under Rule 56(f) because he sufficiently demonstrated why, at the time of the motion for summary judgment, he could not have "present[ed] facts essential to justify [his] opposition" without more discovery. Fed. R. Civ. P. 56(f). In his brief, Sutton "particularly set out the reasons for further discovery" by explaining what facts he needed and why those facts were necessary. Nader v. Blair, 549 F.3d 953, 961 (4th Cir. 2008). Because the district court dismissed McDonald's Corporation without any further discovery, Sutton did not have the opportunity to seek discovery on the issue of agency from McDonald's Corporation. On remand, Sutton is entitled to that opportunity.

Further, we decline to address Sutton's arguments related to apparent agency or the warranty of merchantibility in the

first instance. Though we can address arguments for summary judgment that the district court ignored, O'Reilly v. Board of Appeals of Montgomery County, Md., 942 F.2d 281, 284 (4th Cir. 1991), in light of our holding, the district court, as necessary, should consider Sutton's arguments related to apparent agency and the warranty of merchantibility in the first instance.[7]

## IV.

Based on these findings, we vacate the district court's orders granting summary judgment to McDonald's Corporation and granting judgment as a matter of law in favor of Roth, and we remand this case to the district court for further proceedings consistent with this opinion.

VACATED AND REMANDED

---

[7] Because we find that the district court abused its discretion by failing to consider Sutton's discovery request, we need not reach Sutton's argument related to McDonald's Corporation's affidavit. We do note, however, that the affidavit is of questionable value because the affiant's "personal knowledge" is based on a review of files rather than direct, personal knowledge of the underlying facts.

17

DAVIS, Circuit Judge, dissenting:

The majority vacates the district court's orders granting judgment as a matter of law in favor of Roth, L.L.C., and John Doe (collectively, "Roth") and summary judgment in favor of McDonald's Corporation and remands for a new trial. I respectfully dissent because, in my view, the district court: (1) did not abuse its discretion in excluding the unidentified employee's alleged statement as inadmissible hearsay, and, in any event (2) properly entered judgment as a matter of law in favor of Roth because Sutton failed to provide evidence of a standard of care.

I.

The majority correctly analyzes the admissibility of the employee's alleged statement, "This is what happens to the chicken sandwiches when they aren't drained properly," J.A. 12, under Fed. R. Evid. 801(d)(2)(D).[1] Under Rule 801(d)(2)(D), a

---

[1] It is unclear under which rule of evidence the district court excluded the employee statement. In their briefs and during oral arguments, counsel referred to both Fed. R. Evid. 801(d)(2)(C) and 801(d)(2)(D). It is clear, however, that the employee statement does not fall under Fed. R. Evid. 801(d)(2)(C). Pursuant to Fed. R. Evid. 801(d)(2)(C), Sutton would have had to show that the clerk was authorized by Roth to make the alleged admission. Precision Piping & Instruments, Inc. v. E.I. du Pont de Nemours & Co., 951 F.2d 613, 619 (4th Cir. 1991). There was no such authorization here.

18

statement is not hearsay if the statement was made by an agent regarding a matter within the scope of the agency. Indeed, the agent "need not have the authority to make the statement at issue, but rather the subject of the statement must relate to the employee's area of authority." United States v. Brothers Constr. Co., 219 F.3d 300, 311 (4th Cir. 2000).

The majority accepts Sutton's meager proof, that the declarant "was wearing a McDonald's uniform, helped fill Sutton's order, and responded to questions about McDonald's while working at a McDonald's restaurant," Majority Op. at 11, as sufficient to satisfy the alleged statement's admissibility under the rule. Respectfully, I take a contrary view, bearing in mind the standard of review, because scope of employment is exactly what Rule 801(d)(2)(D) primarily concerns. See, e.g., Cline v. Roadway Express, Inc., 689 F.2d 481 (4th Cir. 1982); Precision Piping & Instruments, Inc., 951 F.2d at 620. Indeed, the Eleventh Circuit has cautioned against the admission of statements under Rule 801(d)(2)(D) when there is insufficient foundational evidence regarding the scope of the declarant's employment:

> [A]lthough the necessary proof may certainly be circumstantial, there must be an adequate foundational showing . . . that the subject of the statement 'concerned a matter' which was within [the] scope of the speaker's agency or employment. Merely showing that a statement was made by one who is identified generally as an agent or employee of the party,

19

>without some further proof as to . . . the scope of his employment . . . establishes neither.

Wilkinson v. Carnival Cruise Lines, Inc., 920 F.2d 1560, 1566 (11th Cir. 1991) (quoting White Indus. v. Cessna Aircraft Co., 611 F. Supp. 1049, 1064 (W.D. Mo. 1985)).

Rule 801(d)(2)(D) requires an affirmative showing of the declarant-employee's area of authority. Here, the employee was unidentified. She could have been hired to clean the facility, work the cash register, take inventory, etc. Sutton presented no evidence regarding the identity of the worker who prepared the sandwich. Indeed, for all that appears, it is possible that the declarant was not even on duty that night.

Thus, at best, it is unclear whether the unidentified employee had such duties as to empower her to speak about food preparation and to permit any such statement to be admitted against Roth under Rule 801(d)(2)(D). In short, there is a dearth of evidence regarding the declarant-employee's area of authority. (Of course, Sutton, his wife, and his son had it fully within their power, on the morning of the incident, to record the identities of the two young women present on behalf of the restaurant; their failure to do so is regrettable, but they must live with the consequences of their inaction.) The district court committed no abuse of discretion in ruling on the admissibility of the alleged statement.

The majority holds that, had the employee's alleged statement been admitted, Sutton would have successfully made out claims for traditional negligence and breach of implied warranty of merchantability against Roth. I respectfully disagree. As explained above, the employee's alleged statement was properly excluded. Even if the alleged statement had been admitted, however, Sutton would still have failed to establish the proper standard of care and any breach thereof.

In order to make out a prima facie case of negligence or breach of warranty, a plaintiff must establish, inter alia, a relevant standard of care and lack of fitness of the accused product, respectively. See Didato v. Strehler, 554 S.E.2d 42, 47 (Va. 2001); Delk v. Columbia/HCA Healthcare Corp., 523 S.E.2d 826, 830 (Va. 2000). Sutton sought to avoid these requirements by characterizing this case as an "unwholesome food case." The majority correctly rejects that characterization.

Nevertheless, the majority relies on a case, never cited by Sutton or discussed by the parties, for the proposition that evidence of the "reasonable expectations of consumers" may constitute evidence of the standard of care in a products liability case under Virginia law. Alevromagiros v. Hechinger Co., 993 F.2d 417, 420 (4th Cir. 1993). But the dicta from

Alevromagiros on which the majority relies does not do the work that the majority would have it do.

First, it is unclear whether Alevromagiros states, even in its dicta, a principle of Virginia law.[2] This is because that case cites as support for its dicta another Fourth Circuit case interpreting Kentucky law. See Sexton By and Through Sexton v. Bell Helmets, Inc., 926 F.2d 331 (4th Cir. 1991). See 993 F.2d at 420.

Even more fundamentally, Sexton explained the operation of the supposed "consumer expectations" test as follows:

> While government and industry standards are readily identifiable for a given product at a given time, the reasonable expectation of purchasers requires a factual examination of what society demanded or expected from a product. This may be proved from evidence of actual industry practices, knowledge at the time of other injuries, knowledge of dangers, the existence of published literature, and from direct evidence of what reasonable purchasers considered defective at the time. While society demands and expects a reasonably safe product, an examination of societal standards at any given point in time usually reveals an expectation that balances known risks and dangers against the feasibility and practicability of applying any given technology.

---

[2] In Alevromagiros this court affirmed a directed verdict for the defendant because there was no evidence of a violation of an established standard of care. 993 F.2d at 421-22. The plaintiff failed to present (1) expert testimony stating that the allegedly defective ladder sold to the plaintiff failed to conform to published industry standards and (2) evidence regarding the reasonable expectations of consumers.

Id. at 337 (emphases added). Thus, as can be seen, even were it assumed that a "consumer expectations" test applies here, Sutton's burden of proof is not remotely satisfied merely by testimony from himself and his son that they (together with their dinner companions) thought the chicken sandwich was "negligently prepared" or "defective." Rather, the test is an objective one, informed by societal standards. Id. Sutton never undertook to offer such evidence because, again, his theory was that this is an "unwholesome food" case.

Consequently, Sutton presented no expert testimony establishing a standard of care for the preparation of fast foods. This failure was and is fatal to his case because, as a matter of law, however "hot," the sandwich was, it was not "unwholesome" and in Virginia, "[e]xpert testimony is ordinarily necessary to establish the appropriate standard of care." Beverly Enterprises-Virginia, Inc. v. Nichols, 441 S.E.2d 1, 3 (Va. 1994), citing Raines v. Lutz, 341 S.E.2d 194, 196 (Va. 1986). The employee's alleged statement that, "This is what happens to the sandwiches when they aren't drained completely," J.A. 12, does not establish the requisite standard of care, or substitute for such evidence.

This case is most analogous to Greene v. Boddie-Noelle Enterprises, Inc., 966 F.Supp. 416, 417 (W.D.Va. 1997), in which a customer sued a fast food restaurant after he suffered burns

23

from spilled hot coffee purchased at a drive-thru window. In Greene, the plaintiff failed to offer evidence of the standard of care and the defendant's breach of that standard. Id. at 417. Specifically, the plaintiff did not offer evidence that the coffee was too hot or the coffee lid was unsecured, thereby violating industry standards for safety. Id. The fact that plaintiff was burned was not proof of the product's defect. Id. at 419. According to the court, "a product need not be foolproof, or perfect." Id.; see Austin v. W.H. Braum, Inc., 249 F. 3d 805, 805 (8th Cir. 2001) (ruling that the high temperature at which hot chocolate was served did not render the drink unreasonably dangerous); Holowaty v. McDonald's Corp., 10 F. Supp. 2d 1078, 1083 (D. Minn. 1998) (granting summary judgment in favor of McDonald's where no evidence existed that coffee purchased was hotter than usual for commercially brewed coffee). Similarly, Sutton failed to offer evidence establishing any relevant standard as to the amount, location, and temperature of hot grease in a fried fast food chicken sandwich. Accordingly, the district court did not err in granting the motion for judgment at the close of the plaintiff's case.

III.

In light of the above, I find it unnecessary to consider whether the district court erred in granting summary judgment

24

dismissing defendant McDonald's Corporation from the case. Plaintiff failed to offer sufficient evidence against the ostensible agent, Roth, and so his claims fail as a matter of law as to the alleged principal, McDonald's Corporation.

## IV.

For the reasons stated above, I respectfully dissent.